**NATIONAL INDEMNITY COMPANY, by Omni Aviation Managers, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 76–1008–HP, 73–566–HP and 73–642–HP.**

United States District Court, C. D. California.

July 6, 1977.

Joyce Lanza, Law Offices of Arthur Wasserman, Los Angeles, Cal., for plaintiff National Indem. Co.

Marshall Filler, Deputy Atty. Gen., Dept. of Justice, Washington, D. C., Donald A. Fareed, Sp. Asst. U. S. Atty., William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DAMAGE ISSUES

PREGERSON, District Judge.

On March 22, 1977, the court made its findings of fact and conclusions of law in

these consolidated cases on the issue of liability. The court concluded that Aardema, pilot of the Piper; Duval and Rudelson, instructor and student pilots of the Cessna 003; and Federal Aviation Administration (FAA) personnel were all negligent, and that the negligence of each was a proximate cause of the Piper/Cessna mid-air collision in the skies over Santa Monica, California on September 9, 1971. Applying California's doctrine of comparative negligence, the court then assigned a specific percentage factor to the degree of negligence attributable to each party as follows:

| Party | Percentage of Fault |
| --- | --- |
| FAA employees—US Gov't | 20 |
| Aardema | 45 |
| Rudelson | 10 |
| Duval | 25 |

On May 17, 18, 19, 20, and 25, 1977, the court tried the damage issues arising out of these three consolidated cases. Those issues included National Indemnity's asserted subrogation claims against the United States. Finding of Fact 11, made on March 22, 1977, refers to National Indemnity's subrogation claim. That finding states:

> On the date of the collision, National Indemnity Company was the insurer of Aviation Unlimited, Inc., the operator of Cessna 003, and Melvin Miller, the owner of the aircraft. On that date Duval was employed as a flight instructor by Aviation Unlimited, Inc., and by reason of such employment became an insured under National Indemnity's insurance policy. As a result of the mid-air collision, National Indemnity paid money to the Rudelson heirs and other persons or business entities for property damage. By reason of such payments, National Indemnity is subrogated to the rights of its insured against third parties.

At trial, National Indemnity was represented by Joyce R. Lanza of the Arthur Wasserman law firm, and the United States was represented by James Stotter, II, Assistant U. S. Attorney.

The court, having heard the evidence, having studied counsel's post-trial briefs, and having given the matter due consideration, makes its findings of fact and conclusions of law on the subrogation issues in the *National Indemnity* case, No. 76–1008–HP, as follows:

## FINDINGS OF FACT

1. At the time of the mid-air collision, the FAA air traffic controllers on duty at the Santa Monica Control Tower were acting within the course and scope of their employment by the United States.

2. At the time of the mid-air collision, Duval was acting within the course and scope of his employment as a flight instructor for Aviation Unlimited, Inc., the operator of the Cessna 003. Duval was operating the Cessna with the consent and permission of its owner, Melvin Miller.

3. Pursuant to its policy No. NCO 1157, National Indemnity, in settlement of claims asserted against its insureds, made the following payments on which its subrogation claims are based:

(a) November 12, 1971, the sum of $5,250.00 to its named insured and the Bank of America for the loss of Cessna 003.

(b) July 27, 1972, the sum of $300.00 to General Telephone Company of California for property damage caused when the aircraft struck the ground.

(c) April 18, 1975, the sum of $551.39 to the Los Angeles Department of Water and Power for property damage caused when the aircraft struck the ground.

(d) July 26, 1974, the sum of $15,000.00 to Lloyd F. and Pauline Larson for injuries and damages sustained by them when the aircraft struck the ground.

(e) April 18, 1975, the sum of $100,-000.00 to the Rudelson heirs in settlement of their wrongful death claim.

4. In defending the claims described in paragraph 3, National Indemnity spent the following sums for attorneys fees and investigation costs:

(a) July 2, 1975, the sum of $42.35 to Charles W. Funaro for investigation costs.

(b) January 24, 1975, the sum of $4,192.55 to Charles W. Funaro for investigation costs.

(c) January 24, 1975, the sum of $20,-563.77 payable to William G. Tucker for attorney's fees.

(d) January 13, 1977, the sum of $6,578.27 payable to William G. Tucker for attorney's fees.

5. Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., National Indemnity filed a claim for damages with the FAA on August 6, 1975. The FAA failed to dispose of the claim within six months after filing. Pursuant to 28 U.S.C. § 2675(a), National Indemnity treated such failure as a denial of its claim and filed its complaint on March 20, 1976.

The following conclusions of law, insofar as they may be considered findings of fact, are found by this court to be true in all respects.

From the foregoing facts the court concludes:

## CONCLUSIONS OF LAW

■ 1. A Federal Tort Claims Act suit may be brought by an insurer who by operation of law has become subrogated to the rights of an insured who could have brought the action originally. *U. S. v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949).

2. " '[S]ubrogation' as applied to an insurer is its right to be put in the position of its insured against third parties legally responsible to the insured for the loss or damage (i. e., the casualty) which the insurer has insured and to the extent of the amount paid." *Sacramento-Yolo Port Dist. v. Cargill of California, Inc.*, 4 Cal.App.3d 1004, 1010, 84 Cal.Rptr. 822, 826 (1970).

3. 28 U.S.C. § 2401(b) provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the

agency to which it was presented." After six months have elapsed, the claimant need no longer wait for the agency's formal denial because 28 U.S.C. § 2675(a) provides: "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim. . . ."

■ 4. The property damage claim for loss of the Cessna 003 accrued on the date of the collision. The other claims listed in paragraph 3 of the findings of fact are based on the theory of implied indemnity and each arose on the date National Indemnity made payments in full settlement of a claim asserted against its insured. *De La Forest v. Yandle*, 171 Cal.App.2d 59, 340 P.2d 52 (1959); *Aerojet General Corp. v. D. Zelinsky & Sons*, 249 Cal.App.2d 604, 57 Cal.Rptr. 701 (1967). Contrary to National Indemnity's contention, "no waiver exists under 28 U.S.C. § 1346 [the jurisdictional statute] once the . . . period of limitations has run. Thus, after the two-year period the District Court has no jurisdiction over the action." *Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959); see *United States v. DeCamp*, 478 F.2d 1188, 1191 (9th Cir. 1973). The claims described in subparagraphs (a) and (b) of paragraph 3 of the findings of fact are time barred. The remaining claims listed in paragraph 3 were timely filed. The same is true of the claims listed in paragraph 4, except to the extent that they involve expenditures for attorney's fees and costs relating to time barred claims. See *Prentice v. North American Title Corp.*, 59 Cal.2d 618, 30 Cal. Rptr. 821, 381 P.2d 645 (1963); *Isthmian Lines, Inc. v. Schirmer Stevedoring Co.*, 255 Cal.App.2d 607, 611–12, 63 Cal.Rptr. 458, 461 (1967) on the subject of recoverability of attorney's fees and expenses relating to implied indemnity claims.

5. As to the timely filed claims, the crucial question is whether Aviation Unlimited and Melvin Miller, who were vicariously liable for the wrongdoing of their agent Duval, had an actionable claim for implied indemnity, to which National Indemnity

could be subrogated, against the United States who was vicariously liable for the wrongdoing of its agents, the FAA air traffic controllers.

6. Indemnity, which imposes the entire loss on one of two or more tortfeasors, is distinct from contribution, which distributes the loss equally among joint judgment tortfeasors. Calif.Code Civ.Proc. § 475(b); see *Herrero v. Atkinson*, 227 Cal. App.2d 69, 73, 38 Cal.Rptr. 490, 492 (1964). Contribution does not lie in the case before this court because no joint judgment has been rendered against two or more defendants. Calif.Code Civ.Proc. § 475(a); see *Winzler & Kelly v. Superior Court*, 48 Cal. App.3d 385, 395, 122 Cal.Rptr. 259, 266 (1975); *Atkinson Co. v. Consani*, 223 Cal. App.2d 342, 35 Cal.Rptr. 750 (1963).

7. Implied indemnity will lie where the facts show that "two persons are responsible by law to an insured person, if one is passively or impliedly negligent, he is entitled to shift the entire liability for the loss to the other party whose active negligence was the proximate and immediate cause of the loss." *Barth v. B. F. Goodrich Tire Co.*, 15 Cal.App.3d 137, 143, 92 Cal. Rptr. 809, 812–13 (1971).

8. "'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily [i. e., vicariously] liable.'" *Alisal Sanitary Dist. v. Kennedy*, 180 Cal.App.2d 69, 74, 4 Cal. Rptr. 379, 383 (1960), quoting from *Builders Supply Co. v. McCabe*, 366 Pa. 322, 325–26, 77 A.2d 368, 370 (1951).

9. Implied indemnity is an equitable remedy which "may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case." *Herrero v. Atkinson*, 227 Cal.App.2d 69, 73, 38 Cal.Rptr. 490, 493 (1964).

10. Applying the broad rules stated in *Barth, Alisal,* and *Herrero* to the facts of this case, the court concludes that National Indemnity does not have a claim for implied indemnity against the United States. FAA employees were active wrongdoers, not their employer the United States. The conduct of the United States was passive, and its vicarious liability was based on the doctrine of respondeat superior. The same can be said of Aviation Unlimited and Melvin Miller whose conduct was also passive and whose vicarious liability stems from the wrongdoing of Duval, their agent. Since the United States, on one hand, and Aviation Unlimited and Melvin Miller, on the other hand, are free from active fault, if the passivity of Aviation Unlimited's and Miller's negligence is the critical factor to be focused on, equity would not require that the burden of loss be shifted from one blameless party to another. "[T]o justify equitable indemnification, the wrongs of the respective tortfeasors must differ essentially in character or kind." *Gardner v. Murphy*, 54 Cal.App.3d 164, 168, 126 Cal. Rptr. 302, 304 (1975). A rule which permitted a vicariously liable National Indemnity to shift its loss to a vicariously liable United States would be unworkable because National Indemnity's right to shift the loss would be neutralized by the right of an equally blameless United States to shift it back.

11. An alternative analysis suggested by Judge William P. Gray of this court in *Coble v. United States*, 335 F.Supp. 49, 51 (C.D.Cal.1971) focuses on the character of the employee's, not the employer's, conduct and also results in a denial of implied in-

demnity in a case such as this where an employer, vicariously liable for the active negligence of his employee under the doctrine of respondeat superior, seeks to shift the loss to a third party. To permit implied indemnity in these circumstances would allow the employer to be relieved of the financial burden caused by his employee's active wrongdoing. Such a result would diminish the employer's incentive to hire careful employees or fire careless ones. To avoid such a result *Coble* at page 51 suggests that "[i]t is the employee's conduct that determines the [employer's] right to indemnity," i. e., that where a vicariously liable employer asserts an implied indemnity claim against a third party that the employee's active wrongdoing is imputed to his employer, thereby precluding loss shifting from the employer to the third party.

12. Judgment shall be entered in favor of the United States and against plaintiff National Indemnity Company who shall take nothing by its complaint.

13. Costs are awarded to the United States.

The Clerk of the Court shall serve copies of these Findings of Fact and Conclusions of Law upon the attorneys of record for the parties appearing in this cause.