602 F.2d 1326
 CA 79-3180 Justin RUDELSON, a minor, Jordan Rudelson, a
minor, each by Jolyn Rudelson acting as their
Guardian ad Litem and Jolyn Rudelson
Individually,
Plaintiffs-
Appellees,
(Cross-Appellants),
v.
UNITED STATES of America, Defendant-Appellant, (Cross-Appellee).
Frances AARDEMA, Gregory Aardema and Gary Aardema,
Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
NATIONAL INDEMNITY COMPANY et al., Plaintiff-Appellant,
v.
The UNITED STATES of America, Defendant-Appellee.
 Nos. 77-3599, 78-2110, 77-3668 and 78-1519.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 23, 1979.
 
 Arnold L. Ross, (argued), Ross, Fields & Zax, Beverly Hills, Cal., for defendant-appellant.
 Eliose E. Davies, Washington, D. C., (argued), for defendant-appellant and on brief for plaintiffs-appellees.
 Ian Herzog, Law Offices of Ned Good, Los Angeles, Cal., for plaintiffs-appellees.
 Appeals from the United States District Court for the Central District of California.
 Before TRASK, GOODWIN and SNEED, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 On September 9, 1971, a dual-controlled Cessna airplane owned by Aviation Unlimited, Inc. and piloted by Jerrold Rudelson, a student aviator, and Thomas DuVal, a flight instructor, collided in mid-air with a Piper aircraft flown by Marvin Aardema. The collision occurred about a mile south of the Santa Monica, California airport control tower at approximately 1,000 feet above the airfield on the downwind leg of the traffic pattern for runway 21. All three men were killed.
 
 
 2
 The survivors of Rudelson and Aardema sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, Et seq., claiming that certain federally employed air traffic controllers had negligently caused the collision. National Indemnity Company, insurer and subrogee of the flight school, sued the United States for indemnification of sums it paid to the Rudelson heirs and others in settlement of their claims against its insureds. The suits were tried by the district court sitting without a jury, and the court's opinions on the issues of liability, damages, and indemnification are reported as follows: Rudelson v. United States, 431 F.Supp. 1101 (C.D.Cal.1977) (liability); Rudelson v. United States, 444 F.Supp. 1352 (C.D.Cal.1977) (damages); Aardema v. United States, 444 F.Supp. 1354 (C.D.Cal.1977) (damages); National Indemnity Co. v. United States, 444 F.Supp. 1356 (C.D.Cal.1977) (indemnification). The cases were consolidated for purposes of appeal.
 
 
 3
 Pursuant to 28 U.S.C. § 2674, the district court determined liability according to the comparative negligence principles of California, the state in which the tortious acts occurred. The court held that the United States was 20 percent at fault because its controllers negligently failed to scan the entry corridor area of the downwind leg of the traffic pattern during a two minute period immediately preceding the collision. Had they done so, they would have seen that the planes were in a position of imminent peril and could have warned the pilots in time to prevent the collision. The court held that Aardema was 45 percent at fault because he entered the traffic pattern unannounced and failed to see and avoid the Cessna as required by Federal Aviation Administration (FAA) regulations. The court further held that Rudelson and DuVal were 10 percent and 25 percent at fault, respectively, for failing to maintain reasonable vigilance so as to avoid colliding with the Piper. Rudelson v. United States, supra, 431 F.Supp. 1101.
 
 
 4
 The court found that Rudelson's heirs had suffered $1,360,586.25 in losses as a result of Rudelson's death. From this sum the court deducted $136,058.62 to reflect the fact that Rudelson was 10 percent to blame for the collision. The damages were then reduced by an additional $200,000, the amount the Rudelson plaintiffs received in settlement of their claims against Aardema, Aviation Unlimited, the company's owner Melvin Miller, and DuVal. This left a net award of $1,024,527.63. Rudelson v. United States, supra, 444 F.Supp. 1352. The court also found that Aardema's heirs had suffered $542,909.14 in losses as a result of Aardema's death. Because Aardema was 45 percent at fault, the court subtracted $244,309.11, producing a net award of $298,600.03. Aardema v. United States, supra, 444 F.Supp. 1354. The United States was held liable for the entire amounts of both net awards under the rule of joint and several liability.
 
 
 5
 The district court rejected National Indemnity Company's indemnification claim against the United States. National Indemnity Co. v. United States, supra, 444 F.Supp. 1356.
 
 
 6
 We affirm each of the district court's rulings.
 
 
 7
 * DUTY OF REASONABLE CARE OWED TO PILOTS BY FEDERAL AIR
 
 TRAFFIC CONTROLLERS
 
 8
 The nature and extent of the duty of due care which air traffic controllers owe pilots is a question of law. Miller v. United States, 587 F.2d 991, 944 (9th Cir. 1978). "(T)he duty to exercise due care to avoid accidents is a concurrent one resting on both the control tower personnel and the pilot." Mattschei v. United States, 600 F.2d 205, 208 (9th Cir. 1979). The government contends that because the FAA operations manual did not expressly order the air traffic controllers to monitor the position of a trainer aircraft while its student pilot practiced take-offs and landings, the controllers were under no legal duty to perform such monitoring. The argument is without merit. It is well settled that air traffic controllers' duties are not limited to the tasks prescribed by FAA manuals. Under especially dangerous conditions, controllers must take steps beyond those set forth in the manuals if such steps are necessary to ensure the safety of pilots and passengers. Spaulding v. United States, 455 F.2d 222, 226 (9th Cir. 1972); Hartz v. United States, 387 F.2d 870, 873 (5th Cir. 1968); Hennessey v. United States, 12 Avi. 17,410, 17,416-17 (N.D.Cal.1971). The law of California is in accord. A person is not necessarily free from negligence just because he " 'may have literally complied with safety statutes or rules. The circumstances may require (him) to do more.' " Hogue v. Southern Pacific Company, 1 Cal.3d 253, 258, 81 Cal.Rptr. 765, 768, 460 P.2d 965, 968 (1969), Quoting Dragash v. Western Pac. R. R. Co., 161 Cal.App.2d 233, 241, 326 P.2d 649, 654 (1958).
 
 
 9
 The question before us is whether, notwithstanding the FAA manual's silence, considerations of safety necessitated closer monitoring of the trainer's position, at least while it was in the vicinity of the entry corridor. We answer in the affirmative. The traffic controllers knew that although the student (Rudelson) and his instructor (DuVal) were under a duty to see and avoid other aircraft, their attention would probably be distracted from time to time by the teaching exercises. The controllers were also aware that planes occasionally stray into the entry corridor unannounced and that the entry corridor is the spot in the traffic pattern where mid-air collisions are most likely to occur. Rudelson v. United States, supra, 431 F.Supp. at 1106. We hold that, given the dangerous realities of this situation, the traffic controllers owed the occupants of the trainer, as well as the pilots of nearby aircraft, a duty to monitor the trainer's position while it was in the vicinity of the entry corridor. The controllers also owed a concomitant duty to transmit warnings by radio or light beam if the planes appeared to be heading on a collision course.
 
 II
 AIR TRAFFIC CONTROLLERS' BREACH OF DUTY
 
 10
 " The actual application of the legal standard to the facts of the case (i. e., the determination on the ultimate question of negligence) is reviewed under the 'clearly erroneous' standard." Miller v. United States,supra, 587 F.2d at 994. We conclude that there was ample evidence in the record to support the district judge's conclusion that the controllers were negligent. With only a quarter turn of his head, the local controller could easily have scanned the entire traffic pattern. Rudelson v. United States, supra, 431 F.Supp. at 1106. By ignoring the dangerous entry corridor area for almost two minutes at a time when the local controller and others knew or should have known that a trainer aircraft was in the vicinity, the FAA tower personnel acted unreasonably and breached their duty of due care.III
 
 RUDELSON'S BREACH OF DUTY
 
 11
 The Aardema plaintiffs concede that Aardema breached his duty of due care, but the Rudelson plaintiffs claim their decedent was not guilty of negligence because, being a student, he was under no duty to see and avoid other aircraft. The Rudelsons' argument is without merit. 14 C.F.R. § 91.67(a) states that "vigilance shall be maintained by Each person operating an aircraft so as to see and avoid other aircraft . . . ." (emphasis supplied). The regulations create no exception for student pilots. Accordingly, we hold that since Rudelson and DuVal shared control of the Cessna, each was under a duty to watch out for other planes. Their respective violations of 14 C.F.R. § 91.67(a) constituted negligence Per se, or at least raised a presumption of negligence. See Mark v. Pacific Gas and Electric Co., 7 Cal.3d 170, 182, 101 Cal.Rptr. 908, 916, 496 P.2d 1276, 1284 (1972); Haft v. Lone Palm Hotel, 3 Cal.3d 756, 763-65, 91 Cal.Rptr. 745, 748-50, 478 P.2d 465, 467-69 (1970). Cf. Gatenby v. Altoona Aviation Corp., 407 F.2d 443, 446-47 (3d Cir. 1969) (violation of FAA regulation held negligence Per se under applicable state law).
 
 
 12
 The plaintiffs contend that Rudelson could not have been negligent because he never had the ability to see, much less avoid, Aardema's Piper. Prior to the collision, the Cessna was climbing from beneath and to the rear of the Piper. The Cessna pilots' upward vision may have been partially obstructed by the plane's high wing configuration, and Rudelson, who was seated on the left side of the Cessna, may have found it especially difficult to see the Piper as it approached from the right. However, none of these circumstances excused Rudelson's duty to see and avoid other aircraft. The district court found that "(b)lind spots can be compensated for by head movement and aircraft movement." Rudelson v. United States, supra, 431 F.Supp. at 1105. Given that capability, Rudelson ought to have maintained a better lookout.
 
 
 13
 The record supports the district court's conclusion that Rudelson breached his duty of reasonable care. His experience was relevant only insofar as it affected his relative culpability. Recognizing that an instructor owes a greater duty of care than does a student, the district judge assigned 25 percent of the blame for the collision to DuVal and only 10 percent to Rudelson. That apportionment of fault, like the district judge's other comparative negligence calculations, was not clearly erroneous.
 
 IV
 CAUSATION
 
 14
 The district court found that if the controllers had not fixed their attention upon one part of the airport area for an unreasonable length of time, they probably would have seen the unannounced Piper, which was plainly visible in a clear sky, in time to warn the Cessna by radio and the Piper by light gun. The court also found that prompt action by the controllers probably would have prevented the collision. These findings were not clearly erroneous, and the conclusions of law based thereon were sound. "An instant's inattention, a moment's hesitation, stood between safety and disaster. Failure to see and realize what was visible and discernible, followed by failure to give immediate warning, constituted negligence . . . ." State of Maryland v. United States, 257 F.Supp. 768, 774 (D.D.C.1966).
 
 
 15
 The fact that the pilots' own carelessness also caused the collision in no way absolved the government of liability. To recover, the plaintiffs did not have to prove that the controllers' negligence "was The sole proximate cause of the injury, but only that such negligence was A proximate cause." American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578, 586, 146 Cal.Rptr. 182, 187, 578 P.2d 899, 904 (1978) (emphasis in original). The pilots' negligence did not break the chain of causation because their failure to see and avoid each other's aircraft was foreseeable by the controllers. See Hoyem v. Manhattan Beach City School Dist., 22 Cal.3d 508, 520-21, 150 Cal.Rptr. 1, 8-9, 585 P.2d 851, 858-59 (1978).
 
 
 16
 Having established that government employees' negligence proximately caused the collision, the plaintiffs were entitled to recover from the United States.
 
 V
 DAMAGES
 
 17
 The government contends that the damages awarded by the district judge were excessive. It relies primarily upon Felder v. United States, 543 F.2d 657 (9th Cir. 1976), which also involved an aviation disaster. In Felder this court reduced several non-pecuniary damage awards that were smaller than those in the instant case. The government argues that for the sake of uniformity, we must do the same here. However, we feel the government's reliance on Felder is misplaced. That decision did not announce an inflexible rule mandating equal damage awards in all airplane disaster cases. The court expressly noted that "in assessing the amount of damages in a wrongful death case, each case must stand on its own facts." Id. at 674. " 'While analogies to, and comparisons with, other cases may be helpful on many types of issues, their usefulness on questions of damages is extremely limited.' " Mattschei v. United States, supra, 600 F.2d at 209, Quoting United States v. English, 521 F.2d 63, 72 (9th Cir. 1975). Unlike the Felder court, after scrutinizing the record before us, we have not been "left with the definite and firm conviction," 543 F.2d at 674, that the awards are excessive.
 
 
 18
 We are likewise unpersuaded that the awards were inadequate. It was proper to deduct income taxes from the plaintiffs' awards. Id. at 670. It was also proper to disregard plaintiffs' attorneys' fees, Cf. Hooks v. Washington Sheraton Corp., 188 U.S.App.D.C. 71, 76, 578 F.2d 313, 318 (1978) (tort suit against private entity).
 
 
 19
 The government assigns as error the district judge's application to the United States of the rule of joint and several liability. It was unjust, the government claims, for the district court to order the United States to pay almost 75 percent of the Rudelsons' damages and 55 percent of the Aardemas' damages when federal employees bore only 20 percent of the blame for the collision. The government concedes, as it must, that California law clearly compels such a result. In American Motorcycle Ass'n v. Superior Court, supra, the Supreme Court of California held that joint and several liability survived the state's transition from an orthodox negligence system to comparative fault.[1] Under American Motorcycle, each tortfeasor whose negligence proximately caused the plaintiffs' injuries is liable for the total damages. The government contends that the American Motorcycle joint and several liability rule should not apply to the United States because it is fundamentally incompatible with the Federal Tort Claims Act's limited waiver of sovereign immunity. The Act waives sovereign immunity only "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). According to the government, joint and several liability, when applied in a comparative negligence context, violates the Act in that it forces the United States to compensate plaintiffs for injuries inflicted by private actors. To prevent that result, the government urges us to supplant state law with a federal rule under which the United States' damages liability would be directly proportionate to federal employees' relative degree of fault.
 
 
 20
 We reject the government's argument for two reasons: first, because it rests upon a false premise; and second, because the Act mandates application of state law under the circumstances of this case. The government apparently assumes that since the air traffic controllers bore 20 percent of the blame for the collision, they caused only 20 percent of the plaintiffs' injuries. The fallacy in the government's reasoning is obvious. This is not the sort of case where one defendant broke the plaintiff's arm and then an hour later, in an unrelated incident, a second defendant broke the plaintiff's leg. Here the injuries were indivisible; all of the defendants, acting concurrently, proximately caused the pilots' deaths. Had any one of the defendants exercised due care, none of the injuries would have occurred. Consequently, each defendant is liable for all of the damages stemming from the collision. Since each defendant was responsible for the totality of the injuries suffered, it is utterly illogical to complain that joint and several liability forces the United States to pay for the wrongdoing of private parties. As the California Supreme Court pointed out in American Motorcycle,
 
 
 21
 "Liability attaches to a concurrent tortfeasor . . . not because he is responsible for the acts of other independent tortfeasors who may also have caused the injury, but because he is responsible for all damage of which his own negligence was a proximate cause. When independent negligent actions of a number of tortfeasors are each a proximate cause of a single injury, each tortfeasor is thus personally liable for the damage sustained, and the injured person may sue one or all of the tortfeasors to obtain a recovery for his injuries; the fact that one of the tortfeasors is impecunious or otherwise immune from suit does not relieve another tortfeasor of his liability for damage which he himself has proximately caused."
 
 
 22
 20 Cal.3d at 587, 146 Cal.Rptr. at 187, 578 P.2d at 904.[2]
 
 
 23
 For the reasons stated above, we conclude that the Federal Tort Claims Act's limited waiver of sovereign immunity was not exceeded, nor was the Act otherwise violated, when the United States was held subject to joint and several liability under a comparative negligence system.
 
 
 24
 We also hold that the Act forecloses creation of a federal damages apportionment rule. Congress has declared that state, not federal, law is controlling on the extent to which the federal government is liable for compensatory damages in tort. See Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Felder v. United States, supra, 543 F.2d at 663; United States v. English, 521 F.2d 63, 70 (9th Cir. 1975). 28 U.S.C. § 1346(b) authorizes the district courts to hear suits brought by persons seeking damages for injuries caused by government employees "under circumstances where the United States, If a private person, would be liable to the claimant In accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2674 provides that "(t)he United States shall be liable, respecting the provisions of this title relating to tort claims, In the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages" (emphasis supplied). We are urged to grant the United States an exemption from California law so as to ensure that it receives more favorable treatment than private tortfeasors get under identical circumstances. The same proposition was squarely rejected in Mattschei v. United States, supra.[3] Congress has promulgated a general rule that the United States' tort liability is coextensive with that of private persons. To that rule Congress has created certain specific exceptions. See 28 U.S.C. § 2680. None of those statutory exceptions expressly or impliedly refers to either comparative negligence or joint and several liability. There being no applicable exception, the general rule applies to the instant case.
 
 
 25
 In summary, we conclude that where, as here, the damages awarded are purely compensatory in nature, the United States can be subjected to joint and several liability under a comparative fault system if a similarly situated private defendant would have been so liable. Since it is undisputed that a private employer of negligent air traffic controllers would have had to pay the Rudelson heirs $1,024,527.63 and the Aardema heirs $298,600.03, so must the government.
 
 VI
 INDEMNIFICATION
 
 26
 National Indemnity Company paid a total of $147,228.33 in settlement of claims against its three insureds, Aviation Unlimited, Inc., Melvin Miller (the company's owner), and Thomas DuVal. National Indemnity, as subrogee of its insureds, then brought suit against the United States, seeking indemnification of the $147,228.33. Some of the company's claims were time-barred, and the district court denied relief as to the rest on the ground that it would be inequitable to shift the entire burden of loss to the United States. Like Aviation Unlimited and Miller, the United States was merely a vicariously liable passive tortfeasor; its conduct as an employer of negligent agents was no more blameworthy than that of Aviation Unlimited and Miller. Therefore, the court held, California law barred total indemnification. Using an alternative analysis, the court also held that DuVal's active wrongdoing, which was imputable to his employers, precluded loss shifting to a third party.
 
 
 27
 The district judge correctly applied California law. For the reasons set forth in the opinion of the district court, National Indemnity Co. v. United States, supra, 444 F.Supp. at 1360-61, we hold that National Indemnity, which stood in the shoes of its insureds, was not entitled to complete indemnification.
 
 
 28
 National Indemnity argues, however, that it should receive partial indemnification under the loss splitting doctrine announced in American Motorcycle Ass'n v. Superior Court, supra. Prior to that decision, only one type of indemnification was available: complete loss shifting from one tortfeasor to another. Contribution was the sole means whereby the burden of paying the plaintiff's damages could be divided between tortfeasors. But contribution was available only between joint judgment debtors. Thus, unless the plaintiff chose to sue two or more concurrent tortfeasors in the same action, there was no way to split the damages. American Motorcycle added the new doctrine of partial indemnity to the existing doctrines of contribution and "all or nothing" indemnity. Under the new rule, a defendant who, because of joint and several liability, has to pay more than his Pro rata share of the total damages can obtain reimbursement of the excess amount from his fellow tortfeasors, provided they have not already settled with the plaintiff.
 
 
 29
 DuVal was 25 percent at fault; consequently the flight school's aliquot portion of the overall damages was 25 percent. Through advantageous pretrial settlements with the Rudelsons and others, Aviation Unlimited, Miller, and DuVal managed to discharge their obligations for just a fraction of that sum. Because its insureds actually paid Less, not more, than their Pro rata share of the damages, National Indemnity cannot use the new American Motorcycle partial indemnification rule to recover from the United States.
 
 VII
 CONCLUSION
 
 30
 The judgments of the district court are AFFIRMED.
 
 
 
 [1]
 The judgments below were rendered before the California Supreme Court decided American Motorcycle. Nonetheless, American Motorcycle controls because the instant case was tried subsequent to the decision of Li v. Yellow Cab Co., 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), which adopted comparative negligence. See Safeway Stores, Inc. v. Nest-Kart, 21 Cal.3d 322, 146 Cal.Rptr. 550, 579 P.2d 441, 447 (1978)
 
 
 [2]
 We also agree with the California Supreme Court's conclusion that the adoption of comparative negligence did not eliminate the reason for applying joint and several liability to concurrent tortfeasors:
 "(T)he simple feasibility of apportioning fault on a comparative negligence basis does not render an indivisible injury 'divisible' for purposes of the joint and several liability rule. . . . (A) concurrent tortfeasor is liable for the whole of an indivisible injury whenever his negligence is a proximate cause of that injury. In many instances, the negligence of each of several concurrent tortfeasors may be sufficient, in itself, to cause the entire injury; in other instances, it is simply impossible to determine whether or not a particular concurrent tortfeasor's negligence, acting alone, would have caused the same injury. Under such circumstances, a defendant has no equitable claim vis a vis an injured plaintiff to be relieved of liability for damage which he has proximately caused simply because some other tortfeasor's negligence may also have caused the same harm. In other words, the mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury."
 American Motorcycle Ass'n., supra, 20 Cal.3d at 588-89, 146 Cal.Rptr. at 188, 578 P.2d at 905. The court also noted that "the overwhelming majority of jurisdictions which have adopted comparative negligence have retained the joint and several liability doctrine." Id. 146 Cal.Rptr. at 189, 578 P.2d at 906.
 
 
 [3]
 In Mattschei v. United States, supra, 600 F2d at 209, the court said:
 "The United States argues that where a comparative negligence rule prevails, its liability is limited to its own share of the negligence which caused an injury. It cites the FTCA, which allows suit against the Government only if injury is "caused by the negligent or wrongful act or omission of any employee of the Government . . .. " 28 U.S.C. § 1346(b). It argues that the statute prohibits the Government from bearing more than its share of the liability in a jurisdiction where comparative negligence provides the mechanism for establishing its share of the liability in the principal suit. We reject the Government's contention.
 The statute plainly makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances' in accordance with 'the law of the place where the wrongful act or omission occurred.' The United States is seeking different treatment than that given to California private tortfeasors. We find no indication in the statute or its history that Congress intended to reject the doctrine adopted by the California Supreme Court that a cotortfeasor is liable to the plaintiff for the whole of an indivisible injury caused by his negligence, even if equitable indemnity is available against the other cotortfeasors." (footnote omitted).