**OPERATING ENGINEERS PENSION TRUST, Operating Engineers Health and Welfare Fund, Operating Engineers Vacation-Holiday Savings Trust and Operating Engineers Training Trust, Plaintiffs-Counter Defendants-Appellees,**

v.

**CECIL BACKHOE SERVICE, INC., Fred Cecil, and Cecil Construction Company, Defendants-Counter Claimants-Third Party Plaintiffs-Appellants,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 12 and Joseph Chaves, Third Party Defendants-Appellees.**

No. 84–6183.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided Aug. 7, 1986.

Anthony R. Segall, Reich, Adell & Crost and Christopher M. Laquer, Jett, Clifford & Laquer, Los Angeles, Cal., for appellees.

Michael A. Hood, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., for appellants.

Before FLETCHER, NELSON, and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

Operating Engineers Pension Trust and three other trust funds (the trusts) sued Cecil Backhoe Service, Inc., Fred Cecil individually, and Fred Cecil doing business as Cecil Construction Co. (the defendants), for deficient trust fund contributions. The defendants contend they are not bound by short form agreements incorporating underlying Master Labor Agreements (MLAs). The defendants also filed a third party claim against Local 12 of the International Union of Operating Engineers and Joseph Chaves, Local 12's business representative, seeking indemnity should the defendants be held liable to the trusts. Chaves was dismissed on a pretrial motion for judgment on the pleadings. Following a two-day bench trial, the district court entered judgment for the trusts on the primary claim and for Local 12 on the third party claim. The defendants appeal the district court's entry of judgment for the trusts and for Local 12. We affirm.

## BACKGROUND

In the early 1970's, Fred Cecil purchased a backhoe and went into business for himself under the name Cecil Backhoe Service. Cecil Backhoe Service was a sole proprietorship that rented the backhoe to construction contractors with Fred Cecil as operator. In 1975, Fred Cecil started a general engineering contracting business called Cecil Construction Co., also a sole proprietorship. Cecil Backhoe Service had only one employee, Fred Cecil, while Cecil Construction Co. employed others in addition to Cecil to perform construction work.

In December 1975, Fred Cecil signed on behalf of Cecil Backhoe Service a short form collective bargaining agreement with Local 12 of the International Union of Operating Engineers. The two-page short form agreement by its terms incorporated the 1974–77 Master Labor Agreement

(MLA) then in effect between Local 12 and the Southern California General Contractors Association. At the same time, Cecil signed trust acknowledgments.

Under the terms of the 1974–77 MLA, any union contractor to whom Cecil rented his equipment with himself as operator was required to make Cecil an employee if the job lasted more than three days. Contractors were therefore reluctant to hire Cecil. Furthermore, as a sole proprietor owner-operator, Cecil could not make contributions to the trust funds for himself. To solve these problems, Cecil incorporated his equipment rental business in 1978 under the name Cecil Backhoe Service, Inc.

In 1980, Cecil learned of upcoming construction work to be done at Vandenburg Air Force Base requiring union labor. In order to qualify, Cecil signed another short form agreement with Local 12, this time on behalf of Cecil Backhoe Service, Inc. The short form agreement incorporated the 1980–83 MLA then in effect. Cecil simultaneously signed trust acknowledgments.

The trusts instituted this suit in March 1982 against Cecil Backhoe Service, Inc., against Fred Cecil individually, and against Fred Cecil doing business as Cecil Construction Co., seeking unpaid contributions. The defendants filed a "counterclaim" against the trusts, Local 12, and Joseph Chaves, Local 12's business representative.[1] The district court dismissed Chaves on his motion for judgment on the pleadings. This order was not appealed. Following a two-day bench trial, the district court issued Findings of Fact and Conclusions of Law; it also entered judgment of $145,265.70 in favor of the trusts on the main claim, and entered judgment in favor of Local 12 on the third party claim. The defendants timely appealed.

## ANALYSIS

### Validity of the Short Form Agreements

Defendants contend that the short form agreements were not binding contracts be-cause the union agents did not inform Cecil of the legal consequences of signing. The district court agreed that the union business agents neither specifically advised Cecil that the agreements would apply to other employees nor told him about the "40-hour presumption." The court found, however, that "[t]here was no affirmative misrepresentation or mistake of material fact in connection with the agreements signed." It further found that had Cecil known that the 1975 agreement would "apply to other employees," or that the 1980 agreement would "cover employees of [Cecil] Construction [Co.]," Cecil would not have signed.

In light of these findings, Cecil argues that the district court's conclusion that valid contracts were formed is unsupportable. Cecil contends that he signed the agreements for the sole purpose of enabling himself, as a sole proprietor and later a corporation, to rent out his equipment with himself as operator on union jobs. He therefore argues that the parties to the agreements had differing intentions, and that valid contracts were never formed due to the lack of mutual assent.

■ Cecil is correct in asserting that general principles of contract law apply to the formation of collective bargaining agreements, *see Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1503–04 (9th Cir.1984); *Teamsters Local Union 524 v. Billington*, 402 F.2d 510, 513 n. 2 (9th Cir.1968), but the fact that Cecil did not fully understand the consequences of signing the agreements does not lead to the conclusion that there was no mutual assent and hence no contract.

■ Parties to collective bargaining agreements are conclusively presumed to have equal bargaining strength. *Waggoner v. ·Dallaire*, 649 F.2d 1362, 1367 (9th

---

1. Although styled a "counterclaim" and referred to as such by all the parties and by the district court, the claim against Local 12 and Joseph Chaves was in fact a third party claim because Local 12 and Chaves were not already parties to the action. *See* Fed.R.Civ.P. 13 (counterclaims); Fed.R.Civ.P. 14 (third party claims).

Cir.1981) (*Waggoner I*), *on remand*, 570 F.Supp. 1168 (C.D.Cal.1983), *rev'd*, 767 F.2d 589 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). Cecil can point to no authority stating that the union business agents had a duty to explain to the employer the terms, conditions, or consequences of a collective bargaining agreement. It is not a defense to claim that a union representative misrepresented the effect of signing an agreement. *See Southern California Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1265–66 (9th Cir.1984) (no defense to assert that union officer misrepresented Bjorklund's eligibility for a pension under the agreement). A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it. *Gilliam*, 737 F.2d at 1504.

The gist of Cecil's argument is that he was not aware of the legal consequences of signing the agreements. This is not a valid defense. Furthermore, Cecil's testimony at trial indicates that he did have a general understanding of the operation of the agreements he signed. Cecil testified that he understood that if he incorporated, he could make trust fund contributions on his own behalf and that he understood that under both the 1975 and 1980 agreements, if he had hired additional employees they would also be covered.

Cecil likens his case to *Gilliam*, but in *Gilliam*, the employer "reasonably and justifiably thought the documents [he signed] involved only an application for union membership." 737 F.2d at 1505. Cecil, on the other hand, was familiar with the union, having been a union member since 1966, and understood the basic operation of the short form agreements. Cecil cannot credibly maintain that he "sign[ed] a document reasonably believing it [was] something quite different than it [was]." *See Gilliam*, 737 F.2d at 1504.

*Renegotiation and Modification of the Master Labor Agreement in 1977*

 Cecil also contends that the first short form agreement terminated when the MLA was renegotiated and modified. He signed a short form agreement on behalf of Cecil Backhoe Service, a sole proprietorship, in December 1975. The short form agreement incorporated the 1974–77 MLA. Two provisions of the short form agreement are potentially relevant in determining whether, when the MLA was renegotiated and modified in 1977, the short form continued in effect under the new 1977–80 MLA.

Article II of the 1975 short form agreement provided in part:

The EMPLOYER, not being signatory to any recognized Operating Engineers' multiple-employer agreement, hereby agrees to accept and be bound by all of the terms and conditions of multiple-employer agreements applicable to the EMPLOYER'S operations and in effect in the area in which the work is performed as recognized, modified and renewed from time to time through collective bargaining between the UNION and the applicable multiple-employer group.

Article V of the same agreement provided in part:

This Agreement shall become effective as of the date shown above and shall continue in effect for the same term as the applicable multiple-employer labor agreements and for any renewals or extensions thereof, unless either party shall give written notice to the other party, at least sixty (60) days prior to the termination date of the appropriate multiple-employer agreement, of its desire to terminate.

The district court held that article V governed termination and was not ambiguous, and that absent evidence of significant modification of the MLA, the short form agreement remained in effect. We review the interpretation of a contractual provision de novo. *Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir.1985).

The Ninth Circuit has been called upon to interpret such provisions several times in the last eight years with seemingly differing results. A brief review of the prior cases will aid our analysis.

In *Seymour v. Coughlin Co.*, 609 F.2d 346 (9th Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980), the court was faced with short form contractual provisions identical to those in the case at bar. The court agreed with the employer that article V was the termination clause and was unaffected by article II which was "jurisdictional." *Id.* at 349–50. The court concluded that under article V, "the short form agreement ... terminate[s] if the original MLA [is] not renewed or extended, and instead [is] modified." *Id.* at 350. The district court found that the second MLA was "'a new and different [MLA] ... which substantially changed, modified and amended the prior [MLA].'" Accordingly, the circuit affirmed the district court's conclusion that the short form terminated simultaneously with the original MLA. *Id.* at 348, 350.

In subsequent cases, this court has distinguished *Seymour* and has held that "a case by case analysis of the agreements involved provides the best evidence of the parties' intent." *Construction Teamsters Health and Welfare Trust v. Con Form Construction Corp.*, 657 F.2d 1101, 1103 (9th Cir.1981). Finding the short form agreement provisions in *Con Form* "readily distinguishable" from those in *Seymour*, the court held that modification of the MLA did not terminate the short form agreement. *Id.* at 1103–04. The case by case adjudication holding of *Con Form* was subsequently followed by this court in three more cases. *See Zinser-Furby, Inc. v. San Diego County District Council of Carpenters*, 681 F.2d 1171, 1172 (9th Cir. 1982); *Waggoner v. Dallaire*, 767 F.2d 589, 592 n. 3 (9th Cir.1985) (*Waggoner II*), *cert. denied*, — U.S. —, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986); *Kemmis*, 767 F.2d at 598. The key provisions of the short form agreements in *Con Form* and the cases that followed it differed in varying degrees from those at issue in *Seymour* and the case at bar.

We conclude that because the language of articles II and V of the short form agreement signed by Cecil in 1975 is identical to that at issue in *Seymour*, we are bound by *Seymour*. *Seymour* held that under the short form provision at issue, a renewal or extension of the original MLA did not terminate the short form agreement, but that a substantial change resulting in a "new and different" MLA would terminate the short form agreement. We must consider, therefore, whether the 1977–80 MLA incorporated substantial changes rendering it "new and different [from]" the 1974–77 MLA. In our case, the district court stated that "there is insufficient evidence to find a significant modification effected by the 1977 ... MLA." After reviewing the evidence, we conclude this finding is not clearly erroneous. Therefore, since there is no substantial change in the MLA, we affirm the district court's holding that the 1975 short form agreement did not automatically terminate in 1977.

*Equitable Estoppel*

 Cecil also contends that the trusts are estopped from enforcing the agreements. When he signed the short form agreements in 1975 and 1980, he signed on behalf of Cecil Backhoe Service and Cecil Backhoe Service, Inc. The district court made findings regarding the interrelated business operations of Cecil Backhoe Service, Cecil Backhoe Service, Inc., and Cecil Construction Co., and concluded that "[Fred] Cecil, doing business as [Cecil] Construction [Co.,] and [Cecil] Backhoe [Service, Inc.], are alter egos of each other and together constitute a single employer." Accordingly, the damages awarded to the trust funds included contributions due on behalf of employees of Cecil Construction Co.

On appeal, the defendants do not challenge the district court's alter ego/single employer findings of fact or conclusions of law. However, they do contend that the trust funds are equitably estopped from applying the short form agreements to employees of Cecil Construction Co. ("Construction") because officials of both the union and the trust funds allegedly were aware of the existence of Construction but

failed to tell Fred Cecil that the agreements could be applied to employees of Construction. This estoppel argument does not succeed.

The four general requirements for application of the doctrine of equitable estoppel are:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985). The primary failing of Cecil's estoppel argument is that it focuses almost exclusively on what the *union* or its representatives knew or intended, rather than on what the *trust funds* knew or intended.[2] This circuit has held:

As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement. Trust authorities set up pursuant to section 302 of the LMRA have long been held to constitute a distinct and independent entity separate from the union that negotiates the collective bargaining agreement establishing a trust.

*Waggoner I*, 649 F.2d at 1368. The trust funds cannot, therefore, be estopped based on alleged actions or acquiescence of the union or its agents. *See Mann v. Charter Oak Fire Insurance Co.*, 196 F.Supp. 604, 610 (E.D.Ark.1961) (estoppel operates only between the parties and their privies, not for or against third parties), *aff'd*, 304 F.2d 166 (8th Cir.1962); *In re Lotta Water Land Co.*, 25 B.R. 32, 36 (Bankr.N.D.Tex. 1982) (bankruptcy trustee not estopped where trustee was not in privity with the attorneys for the creditors who allegedly made the misrepresentations).

The defendants also contend that the trust funds are estopped because "the Funds ... delayed years before attempting to apply the agreements to Construction." Claims of estoppel cannot be based on delay alone. Allowance of such claims would effectively override statutes of limitations in determining when actions are time barred.

*Repudiation*

■■■ Cecil finally argues that he repudiated the short form agreements. The 1975 and 1980 agreements were construction industry "prehire" agreements authorized by § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). Such agreements may be repudiated by the employer before the union establishes majority status. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983). Prior to repudiation, however, the contract is binding despite the lack of majority support for the union. *Id.* Cecil contends on appeal that Cecil Construction Co. repudiated the short form agreements and therefore is not obligated to make trust fund contributions.

Cecil did not present this argument below, and it was not included as an issue in the district court's Pre-Trial Conference Order. The district court made no findings or conclusions regarding repudiation. Because this issue was not properly raised in the trial court, we do not consider it on appeal. *See Kemmis*, 767 F.2d at 598 (court refuses to consider argument that § 8(f) prehire agreement was repudiated because issue was not properly raised below); *Bjorklund*, 728 F.2d at 1264.

*Indemnification*

■■ After the trust funds instituted this suit against the defendants, the defendants filed a third party claim against the union, Local 12, seeking indemnity should damages be awarded against the

2. Only in one footnote in their brief do the defendants even allege any knowledge on the part of the trust funds. *See* Opening Brief of Appellants at 29 n. 17 (the funds' field representative, Harold Epling, allegedly knew of the two businesses). But the defendants do not demonstrate how such knowledge would satisfy the four elements of equitable estoppel. Furthermore, the district court made no findings regarding Epling's knowledge, and the defendants have not challenged the decision below on the basis of the lack of such findings.

defendants. The district court made findings relating to Local 12's business agents' interactions with Cecil, and concluded that Local 12 "owed Cecil no duty to disclose" that the agreements would apply to employees of Cecil Construction Co. and that "[d]efendants are not entitled to indemnity." The defendants contend on appeal that they are entitled to equitable indemnity.

The defendants do not challenge the district court's conclusion that Local 12 owed Cecil no duty to disclose, but instead argue that " 'equity and good conscience' dictate that the Union must indemnify [defendants] for any trust payments to the Funds." *See Herrero v. Atkinson,* 227 Cal.App.2d 69, 38 Cal.Rptr. 490 (1964). *Herrero,* however, requires that the union must have committed a "wrong" to entitle the defendants to equitable indemnity. *See id.* at 74, 38 Cal.Rptr. at 493. The defendants have identified no "wrong" or tort committed by Local 12 which would entitle them to equitable indemnity. *See United Air Lines, Inc. v. Wiener,* 335 F.2d 379, 398–99 (9th Cir.) (noncontractual indemnity may arise among *tort-feasors*), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *National Indemnity Co. v. United States,* 444 F.Supp. 1356, 1360 (C.D.Cal.1977) (same), *aff'd sub nom. Rudelson v. United States,* 602 F.2d 1326 (9th Cir.1979). The defendants are therefore not entitled to indemnity.

*Attorney's Fees*

▮ The trust funds seek attorney's fees on appeal. Title 29 U.S.C. § 1132(g) governs the award of attorney's fees in ERISA actions. Statutory provisions allowing attorney's fees generally permit the award of fees for the costs of appeal. *Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1417 (9th Cir.1984); *see also Bjorklund,* 728 F.2d at 1266 n. 3. Under § 1132(g)(2), trust funds that successfully sue for unpaid contributions "shall" be awarded reasonable attorney's fees. This provision is mandatory. *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 514 (9th Cir.1984). We accordingly grant the trust funds' request for attorney's fees on appeal.

▮ Local 12 seeks attorney's fees and double costs for defending against the defendants' appeal on its third party claim for indemnity. Under Fed.R.App.P. 38, we "may award just damages and single or double costs to the appellee" for defending against a frivolous appeal. *See also* 28 U.S.C. § 1912. This may include attorney's fees. *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). An appeal is considered frivolous "when the result is obvious or the appellant's arguments of error are wholly without merit." *Id.* (citations omitted).

The defendants' equitable indemnity argument, to which they devote only two pages of their brief, and in support of which they cite only inapposite authority, satisfies this test of frivolity. The defendants did not challenge the district court's conclusion that Local 12 owed Cecil no duty, and yet persisted in arguing that they were entitled to indemnity for a "wrong" committed by Local 12. We therefore award attorney's fees and double costs to Local 12. *See DeWitt v. Western Pacific Railroad Co.,* 719 F.2d 1448, 1451 (9th Cir.1983) (awarding fees and stating: " 'Counsel must realize that the decision to appeal should be a considered one, ... not a knee-jerk-reaction to every unfavorable ruling' " (quoting *Simon & Flynn, Inc. v. Time, Inc.,* 513 F.2d 832, 835 (2d Cir.1975)).

AFFIRMED.