## HART v. CALIFORNIA PACIFIC TITLE & TRUST CO. et al.

### No. 10333.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1943.

James T. Boyd, of Reno, Nev., for appellant.

Halverson & Halverson, of Los Angeles, Cal., for appellees Halverson and Mueller.

Sterling Carr and Francis P. Walsh, both of San Francisco, Cal. (A. Dal. Thomson, of San Francisco, of counsel), for appellees Humphrey Estates, Jones, Edwards, Hazen and Hazen.

Edward D. Landels, Landels & Weigel, Thomas E. Palmer, and Stoney, Rouleau, Stoney & Palmer, all of San Francisco, Cal., for appellees California Pacific Title & Trust Co., and Title Insurance & Guaranty Co.

Before HANEY and HEALY, Circuit Judges, and ST. SURE, District Judge.

HEALY, Circuit Judge.

Appellant Hart is trustee for the Mount Gaines Mining Company in reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Upon his petition the appellees were ordered to show cause why they should not convey to the debtor the title to a three-fourth interest in a certain mining property situate in Mariposa County, California. From the dismissal of his petition the trustee appeals.

The petition shows that in December 1933 one Humphrey executed a ten-year lease on the mine to Yates and Binns with an option in the latter to purchase an un-

divided three-fourths interest. As the result of proceedings in a state court Humphrey thereafter conveyed title to appellee California Pacific Title and Trust Company in trust for certain individuals, appellees here, subject to the terms of the lease. In December 1934 the lease was assigned to the corporate debtor.

The lease provided for the payment monthly of a gross royalty of 10% of all production, the royalty "to be considered as a rental only." All equipment and improvements installed by the lessees were to be deemed fixtures, becoming part of the mine, as were any water rights acquired in the course of the operation. There was a provision for an extension for a further term of ten years at lessees' option. The controversy below and here revolves around *the interpretation of the provision granting the option to purchase.* We quote it in full:

"Said owner, for and by the considerations and agreements herein therefore grants unto the Lessees an option to purchase an undivided three-fourths (¾) interest in said mine, property and all appurtenances thereof for the sum of Fifty Thousand Dollars ($50,000.00) at any time within the period of this lease and or any extension of time thereof; provided this lease shall be in force and effect. Said purchase price shall be payable as follows: Ten Thousand Dollars ($10,000.00) to be paid in cash at the time of notice to the first party of the exercising of said option to purchase, and a like sum of Ten Thousand Dollars ($10,000.00) to be paid on or before the expiration of each and every period of six (6) calendar months thereafter, until said purchase price of Fifty Thousand Dollars ($50,000.00) shall be fully paid. It is further agreed that seventy-five per cent (75%) of the royalties and rental payments paid under this lease shall be applied and credited upon the purchase price of the said three-fourth (¾) interest in said property herein provided to be sold in event the second parties exercise said option and purchase said property hereunder, and shall from time to time be credited upon the installment of purchase price next becoming due and payable after the first installment herein mentioned."

On May 25, 1937, the Mount Gaines Company served a written notice on appellees stating that it "hereby elects to exercise, and does exercise, the option to purchase." The notice directed the owners to apply upon the purchase price three-fourths of all the royalty payments theretofore made. At that time $17,418.48 in royalties had been paid, so that 75% thereof amounted to the sum of $13,063.86. In reply, the trustee for the owners declined to accept the notice as a valid election for the reason that it was not accompanied by a payment of $10,000 in cash. Thereafter the Mount Gaines Company continued to pay the stipulated royalties. By August 28, 1939, these additional payments amounted to $49,532.89. Had three-fourths of all royalties been applied thereon, the purchase price of $50,000 would then have been over-paid by the sum of $213.53. The royalty payments were thereafter continued down to the time of the filing of the instant petition, namely, February 28, 1942.

The petition asked that the Mount Gaines Mining Company be declared the owner of an undivided three-fourths interest in the mine and that appellees be required to convey title thereto. Also that they be directed to return excess royalty payments. Appellees entered special appearances and moved to dismiss the petition on the ground that it failed to state a claim upon which relief could be granted. The court ordered a dismissal without prejudice, holding that all royalty payments made prior to the exercise of the option were rentals only; and that the failure of the optionee to tender a cash payment of the full amount of the first installment rendered the election ineffective.

We think the trial court's interpretation of the contract is the correct one. It is elementary, and appellant so concedes, that an option must be accepted according to its terms. 66 C.J. §§ 22, 23. Looking to the entire contract, it appears that not only was notice to be given of the election but also "ten thousand dollars [was] to be paid *in cash* at the time of notice." This being true, of course the notice of election did not of itself operate as an acceptance of the owners' offer to sell. The lessee was so informed by the representative of the owners at the time the notice was given. This case is not like Smith v. Bangham, 156 Cal. 359, 104 P. 689, 690, 28 L.R.A., N.S., 522, where there was no provision for a down payment and where the option specifically provided that it should be exercised "by notifying me [the optioner] in writing of such exercise of option."

But appellant earnestly contends that the down payment requirement had already been satisfied by royalties, *that is to say,*

that the lessee, having elected to exercise the option, was entitled to have applied upon the down payment 75% of the royalties paid prior to the giving of the notice. He rests his contention upon the following language of the contract: "It is further agreed that 75% of the royalty and rental payments paid under this lease shall be applied and credited upon the purchase price of said three-fourths interest * * * in event the second parties exercise said option and purchase said property. * * ·*·" Torn from its context, this language might well be deemed conclusive. But it is qualified by the language immediately following it and forming part of the same sentence, namely, "* * * and shall from time to time be credited upon the installment of purchase price next becoming due and payable after the first installment herein mentioned." The reference to the "first installment" can only be to the $10,000 cash payment required to be made at the time of notice of exercising the option. If this language is to be given any effect, it must mean, at the least, that the credits of 75% of the rents and royalties were to be made only upon the subsequent installments and not on the down payment.

Effect must also be given the language found elsewhere in the agreement, namely, that the royalty payments were "to be considered as a rental only." Taking this somewhat ambiguous contract by its four corners and attempting to construe it reasonably, it would appear, indeed, that rentals or royalties paid prior to the exercise of the option were not to be credited on any of the installments of the purchase price, either the first or the later ones, but were to belong to the lessor absolutely. The lease was for a term of ten years, with option in the lessee to renew for an additional term. If the construction given the contract by appellant be adopted it would follow that the lessee could continue to operate as such over the full period of ten or twenty years, paying meanwhile only royalties out of production and without at any time having bound himself for the purchase price; and then, when the royalties paid

equaled the agreed purchase price, could give notice of his election and require all previous rentals to be credited, thus entitling himself to a conveyance without further obligation on his part. We think the contract was intended to confer on the lessee no such broad privilege. In event of his exercise of the option to purchase, his obligation to pay the periodical installments became absolute and deficiencies in royalties had to be made up in cash; and a period of but two years was given him within which to pay the full purchase price of $50,000. Appellant's interpretation would enlarge this period to the whole term of the lease, and under it the lessee would be required to take no chances at all. Such an interpretation appears inadmissible. Like mining operations generally, this was a speculative venture, with no assurance that the returns from the mine would ever warrant its purchase at the named figure. It might well be to the advantage of the lessee, and more convenient for him, to continue to pay royalties over the long period rather than to exercise the option to buy, thereby binding himself to pay the large sum of $50,000 within the relatively brief time given him by the terms of the option. In fact the Mount Gaines Company and its predecessors had been operating strictly as lessees for three and a half years before the election was attempted; and the royalties had been accumulating over the whole of that long period.

While the parties might well have employed language more clearly expressive of their intent, yet "the construction given the instrument by the trial court appears to be consistent with the true intent of the parties, and, where that is the case, the appellate court will not substitute another interpretation, though it seem equally tenable." Kautz v. Zurich Gen. Acc. & Liability Ins. Co., 212 Cal. 576, 582, 300 P. 34, 37.

Affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.