Joseph H. SEYMOUR, etc., et al., Plaintiffs-Appellants,

v.

COUGHLIN COMPANY, a California Corporation, Defendant-Appellee.

No. 76–3701.

United States Court of Appeals, Ninth Circuit.

Oct. 5, 1979.

Rehearing Denied Dec. 28, 1979.

Jackson E. Chandler, Downs & Chandler, La Verne, Cal., for defendant-appellee.

Wayne Jett, Los Angeles, Cal., argued, for plaintiffs-appellants.

Before TRASK and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

**348**

WALLACE, Circuit Judge:

Trustees of various pension funds and trusts appeal from a summary judgment entered against them by the district court in their action, as third party beneficiaries, for breach of contract against Coughlin Company (Coughlin). The trustees contend that the district judge improperly failed to follow the statutory mandate of the National Labor Relations Act, and improperly construed the collective bargaining agreement between the International Union of Operating Engineers, Local Union No. 12 (the Union) and Coughlin. We affirm.

I

In 1967, Coughlin executed a "short form" collective bargaining agreement with the Union. The short form agreement incorporated substantially all of the terms, including those governing pension fund contributions, of the Master Labor Agreement (MLA), a multiple employer collective bargaining agreement negotiated between the Union and several Southern California general contractors' associations (contractors). The MLA had a term of four years and was to expire on July 1, 1969. Coughlin was not a party to the MLA at the time it executed the short form agreement with the Union.

In accordance with the terms of the MLA, the Union gave timely written notice to the contractors of its desire to negotiate modifications to the terms of the MLA. Neither the Union nor Coughlin gave written notice to the other party of a desire to terminate or modify the short form agreement between them.

The district judge found that the contractors and the Union "entered into a new and different [MLA] for the period 1969–1974 which substantially changed, modified and amended the prior [MLA]." The district judge also found that after the July 1, 1969, expiration of the original MLA, Coughlin requested the Union to dispatch a worker to it. The Union did so, and Coughlin later reported hours of employment, and paid fringe benefit contributions on behalf of the worker to the trustees for the period October–December 1969. Coughlin paid these contributions pursuant to the provisions of the modified, 1969–1974 MLA which was then in effect.

The district judge concluded that, because neither party to the short form agreement had given notice of intent to terminate or modify it, the agreement "was effective by the provisions of its Article V for the term of the MLA 1965–69 and any 'renewals or extensions' thereof." Pursuant to his finding that the modified, 1969–1974 MLA was "new and different," the district judge concluded that the original MLA was not extended or renewed, and that the short form agreement terminated simultaneously with the original MLA on July 1, 1969.

The trustees contend that the district judge erred because he failed to give effect to the alleged mandate of section 8(d) of the National Labor Relations Act (Act), 29 U.S.C. § 158(d), and because he allegedly misconstrued the termination provision of the short form agreement.

II

■ The trustees argue that section 8(d) of the Act effectively prevents termination of any collective bargaining agreement until one of the parties to such an agreement serves a written notice of termination upon the other party in accordance with that section. Because it was not timely raised, however, we do not reach the merits of this argument. As the trustees concede, they did not present this argument to the district judge in any form until, after the district judge had already tentatively ruled in the case, they filed their objections to the proposed findings of fact and conclusions of law. The section 8(d) issue was not included in the pretrial conference order. Neither did the trustees make any motion to amend this order. Coughlin had no meaningful opportunity to argue the question in the district court and the district judge thus appropriately chose not to rule on the issue. See Fed.R.Civ.P. 16.

"As a general rule, 'a federal appellate court does not consider an issue not passed

upon below.' " *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). *Accord, e. g., Roberson v. United States*, 382 F.2d 714, 718 (9th Cir. 1967). *See also McCaffrey v. Diversified Land Co.*, 564 F.2d 1241, 1243–44 (9th Cir. 1977) (per curiam). While we have recognized a number of exceptions to this rule, none is applicable here.

In *Patrin*, we observed that where a recent change in the law results in a new theory or issue to be asserted, we may, in our discretion, allow a party to raise that theory or issue in the interests of justice. 575 F.2d at 712. Section 8(d), however, is not of recent origin, nor is there a recent change in its interpretation pertinent to the issues involved in this case.

We stated in *Patrin* that we also may consent to consider an issue which "is purely one of law and either does not affect or rely upon the factual record developed by the parties." *Id.* Although the question at issue here does appear to fit this guideline, we emphasized in *Patrin* that this exception is inapplicable when the party against whom the issue is raised may be prejudiced by it. "Thus, if he might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue," we should not consider a theory or issue not properly raised in the district court. *Id.* As the arguments before us demonstrate, the trustees' section 8(d) position raises new legal questions which require distinct arguments regarding the scope and applicability of that section.

The exceptions to the rule that issues not considered in the district court may not be raised on appeal are designed to prevent what we have termed "manifest miscarriage[s] of justice," *McCaffrey v. Diversified Land Co., supra*, 564 F.2d at 1243–44. The trustees have not demonstrated that consideration of their new theory is called for either by the exceptions to the rule or by the principle which lies behind them. The question is not preserved for appeal under these circumstances.

III

■ The trustees' second contention is that the district judge improperly construed the short form agreement. While both parties contend that the agreement is unambiguous, each contends for an interpretation favorable to its own position. As observed earlier, the district judge concluded that Article V of the short form agreement controlled the termination of that agreement. He ruled that, pursuant to the terms of Article V, significant modification of the original MLA terminated that agreement and, consequently, the short form agreement, as well.

Article V of the short form agreement states:

This Agreement shall become effective as of the date shown above and *shall continue in effect for the same term as the applicable multiple-employer labor agreements and for any renewals or extensions thereof*, unless either party shall give written notice to the other party, at least sixty (60) days prior to the termination date of the appropriate multiple-employer agreement, of its desire to terminate.

(Emphasis supplied.) The trustees argue that Article V is modified by Article II of the short form agreement, which provides in part:

The EMPLOYER, not being signatory to any recognized Operating Engineers' multiple-employer agreement, hereby agrees to accept and be bound by all of the terms and conditions of multiple-employer agreements applicable to the EMPLOYER'S operations and in effect in the area in which the work is performed as recognized, modified and renewed from time to time through collective bargaining between the UNION and the applicable multiple-employer group.

Specifically, the trustees suggest that Article II effectively continues the short form agreement in full force and effect even in the face of a modification of the MLA. Coughlin counters that Article II is "jurisdictional," and speaks only to possible modi-

fications of territorial and jurisdictional assignments as regards coverage of particular work units by various collective bargaining agreements.

The district judge apparently agreed with Coughlin's position, for he did not make any reference to Article II in his findings of fact and conclusions of law. We cannot find fault with the district judge's interpretation of the contract. Article V is clear. While Article II may not be as clear, it is strongly suggestive of the interpretation favored by Coughlin. Indeed, we find no reason to believe that Article II has any bearing on Article V, which the trustees concede is the termination clause of the agreement. Article II speaks of "multiple-employer agreements applicable to the EMPLOYER'S operations and in effect in the area in which the work is performed *as recognized, modified and renewed* from time to time . . . ." (Emphasis supplied.) Article V speaks of the short form agreement continuing "in effect for *the same term* as the applicable multiple-employer labor agreements and *for any renewals or extensions thereof* . . . ." (Emphasis supplied.) The terminology is quite different. Moreover, it may reasonably be inferred that the purposes of the clauses are distinct, for they are located in different portions of the agreement, and neither clause makes any reference to the other. We agree with the district judge that the agreement "[does] not appear to be unclear in . . . intent or effect." Indeed, were the agreement construed otherwise, Coughlin would, so to speak, be purchasing "a pig in a poke." He would be bound by the terms of any new MLA, no matter how different the terms of the modified agreement from those of the original, and although he had no part in negotiations for that new agreement.

While, as the trustees suggest, Coughlin could have given 60 days' notice prior to termination of the original MLA, this would require him to take preemptive action, even if he is satisfied with the terms of the original agreement and hopes that it is renewed. It seems more reasonable, as the district judge found and as the clear language of Article V indicates, that the parties intended for the short form agreement to terminate if the original MLA was not renewed or extended, and instead was modified. Although the parties could perhaps have more clearly expressed their intent, the district judge's construction of the short form agreement appears to reflect the parties' intent. Ordinarily, we will not set aside such an interpretation on appeal. *See Hart v. California Pac. Title & Trust Co.,* 136 F.2d 430, 432 (9th Cir. 1943).

## IV

The trustees next contend that the district judge improperly concluded that the modified MLA was not a renewal or an extension of the original MLA, pursuant to Article V of the short form agreement. In this regard, the trustees suggest that the district judge incorrectly relied upon *East Bay Union of Machinists, Local 1304 v. Fibreboard Paper Prods. Corp.,* 285 F.Supp. 282 (N.D.Cal.1968), *aff'd mem.,* 435 F.2d 556 (9th Cir. 1970).

In *Fibreboard,* the union sought damages for an alleged breach of a collective bargaining agreement. An important question was whether the notice of modification sent by the union to the employer, prevented the agreement from being automatically renewed. *Id.* at 283–84. The agreement contained a clause which provided that the agreement would be considered "renewed from year to year" unless one of the parties gave notice of intent to modify or to cancel. *Id.* at 284. The second paragraph of that clause provided that within 15 days of such reopening notice, the opening party would submit a list of proposed modifications, and that all other sections of the agreement would "remain in full force and effect." *Id.*

The district court concluded:

To renew, in the present context, means to "begin again" or "continue in force" the old contract. WEBSTER'S INTERNATIONAL DICTIONARY, Unabridged, p. 2109 (2d ed. 1950). Once one of the parties has stated his desire to modify the *old* contract, that contract

cannot obviously be "renewed," since there would in effect be a *different* or *new* contract. This is the clear meaning of the first paragraph of the [clause]. *Id.* at 287 (emphasis in original). The court also decided that the language of the second paragraph of the clause, regarding terms remaining in "full force and effect," was intended by the parties to limit the scope of negotiations prior to termination of the agreement, as determined by the first paragraph of the clause. *Id.*

The trustees contend that *Fibreboard* is not authority here because, while notice was given in that case, neither party to the short form agreement before us here gave notice to the other. This argument misses the point. The short form agreement at issue here referred to "renewals or extensions" *of the MLA*, not of the short form agreement.[1] In this case, notice was given pursuant to the terms of the MLA. Therefore, the district judge could properly look to *Fibreboard* for guidance.

The trustees' reliance upon *NLRB v. International Hod Carriers Local 300*, 287 F.2d 605 (9th Cir. 1961), and *Calhoun v. Bernard*, 333 F.2d 739 (9th Cir. 1964), *on appeal from remand*, 359 F.2d 400 (9th Cir. 1966), is to no avail.[2] The trustees suggest that these cases demonstrate that an agreement containing an automatic renewal provision cannot be terminated without notice. We disagree.

*Hod Carriers*, which arose out of an unfair labor practice proceeding before the Board, rather than an action for breach of contract, only held that automatic renewal

provisions were valid, and that pursuant to them, a contract could remain in effect for a significant period of time. 287 F.2d at 610. In that case, the short form agreement was "absolutely silent as to the existence or incorporation of . . . a master contract." *Id.* at 608. Rather, the agreement referred only "to 'the wage scales, classifications and working rules of the Union having jurisdiction,'" and similar general circumstances regarding union procedures and working conditions. *Id.* Moreover, because of the failure to make any reference to a master contract, the agreement was clear that it would "remain in effect until either party [gave] notice of intent to terminate." *Id.* Under those circumstances, renewal or modification of any master agreement was irrelevant to the life of the short form agreement then at issue.

The circumstances of the *Calhoun* cases are also distinguishable from those before us here. Quite apart from blindly binding himself to unknown future agreements, the employer there "was informed that, by executing [the short form agreement], he was bound by the 1954 master agreement and the 1957 and 1959 amendments." 359 F.2d at 401. Moreover, the short form agreement there plainly provided (after elimination of a typographical error) that the employer would be bound by the master agreement and "any modification or changes" therein. *See* 359 F.2d at 401; 333 F.2d at 740.

## V

Finally, contrary to the Union's contention, Coughlin's decision to provide con-

---

1. The trustees do not contend that the term "extension" used in the short form agreement means anything substantially different from the word "renewal." Indeed, it seems clear that both of these terms refer to some sort of revitalization of the original MLA.

2. Subsequent to submission of this case for decision, we decided *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456 (9th Cir. 1979). In *Waggoner*, C & D Pipeline Company had signed only a short form agreement, which incorporated the terms of a master agreement. Subsequently, the master agreement was amended. While we implicitly held that the short form agreement before us there continued in force

despite the amendment of the master agreement, and that the terms of the amended master agreement were incorporated into that short form agreement, we do not find that case dispositive.

In *Waggoner*, the parties apparently did not raise, and certainly we never considered, the question whether the short form agreement at issue there could or would terminate upon notice of intent to seek amendment of the relevant master agreement. Most important, however, we cannot be certain that the termination clause of the short form agreement in *Waggoner* is identical or even similar to the termination clause of the agreement before us here.

tributions to the Union after July 1, 1969 (the termination date of the original MLA), pursuant to the terms of the new, modified MLA, does not demonstrate that Coughlin was bound by or believed that it was bound by the terms of the new MLA. Certainly, this is not sufficient to demonstrate that the district judge erroneously construed the agreement.

## VI

Therefore, the district judge did not err in concluding that the short form agreement between Coughlin and the Union terminated with the termination of the original MLA, July 1, 1969.

AFFIRMED.