**ZINSER–FURBY, INC., and Zinser Constructors and Furby Construction Co., Inc., A Joint Venture, Plaintiff,**

v.

**SAN DIEGO COUNTY DISTRICT COUNCIL OF CARPENTERS, Defendant.**

Civ. No. 80–1444–T.

United States District Court, S. D. California.

May 15, 1981.

Merrill & Schultz, San Diego, Cal., for plaintiff.

L. William McGrath, Jr., Ludecke, McGrath & Denton, San Diego, Cal., for defendant.

## MEMORANDUM OPINION

TURRENTINE, District Judge.

This lawsuit is brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Having heard all of the evidence and testimony at trial, the court delivers the following opinion, pursuant to Federal Rule of Civil Procedure 52(a).

Plaintiff is a joint venture comprised of three separate California corporations: Zinser-Furby, Inc., Zinser Constructors, and Furby Construction Co., Inc. The joint venture is organized under the laws of the State of California, and has its offices and principal place of business in San Diego, California. Defendant labor organization is an unincorporated association having its principal place of business in San Diego County.

At all times mentioned plaintiff has been engaged in the demolition and reconstruction of Pier 2 and the widening and installation of utilities on Pier 6 at the 32nd Street Naval Station for the United States Department of the Navy. The contract price to perform the services pursuant to contract No. N62474–77–C–2565 was approximately $25 million.

Prior to commencing work on the project a pre-job conference was held on September 25, 1979. Present were representatives of both plaintiff and defendant. Plaintiff had decided to use a union work force, and the meeting was utilized to acquaint representatives of various unions with the project, and to avoid possible jurisdictional work disputes as to which tasks would be performed by carpenters and laborers. There was no discussion by the parties in regard to strikes or work interruption.

Plaintiff informed everyone at the pre-job conference that the project would take from one and one-half to two years to complete. Since the joint venture entity was not party to any collective bargaining agreement with union carpenters, defendant proffered its standard two-year "short form jobsite agreement" (short form). The short form is a document less than two pages in length which incorporates by refer-

ence substantially all of the wage, fringe benefit, and working condition clauses of the "from time to time current" Master Labor Agreement (MLA), which is a multiple employer collective bargaining agreement negotiated between defendant and several contractors' associations. *See Seymour v. Coughlin Co.*, 609 F.2d 346, 348 (9th Cir. 1979), *cert. denied* 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980). The principal officers of plaintiff were quite familiar with MLA's, having been signators to them in the past. Plaintiff signed the short form on September 28, 1979.

At the time the short form was signed the current MLA ran from June 16, 1977 to June 15, 1980. On April 15, 1980 defendant served timely notice on signatories to the MLA that it intended to terminate the 1977–80 MLA. There was no requirement that defendant notify plaintiff of defendant's intent to terminate the 1977–80 MLA. *See Ted Hicks and Associates, Inc. v. N.L. R.B.*, 572 F.2d 1024 1027 (5th Cir. 1978). Plaintiff was, however, quite aware of the negotiations underway to reach a successor MLA. By letter dated June 9, 1980 plaintiff sought assurances from defendant that carpenters would not strike plaintiff upon expiration of the 1977–80 MLA. Plaintiff's Exhibit 18. Defendant did not send such assurances.

The 1977–80 MLA was extended beyond June 15, 1980, to June 30, 1980, by mutual agreement while negotiations continued. The negotiations became deadlocked and the 1977–80 MLA terminated on June 30, 1980. Defendant immediately called a general strike against all companies employing carpenters, including plaintiff. Pickets were placed at entrances to the Naval Station jobsite. Carpenters and other union crafts refused to cross the primary picket lines. Thus the work of plaintiff was effectively terminated for the duration of the strike, which lasted from July 1, 1980 through July 21, 1980.

During the strike defendant offered plaintiff an interim labor agreement which would have continued in force all terms of the 1977–80 MLA, but would have altered

the wage and fringe benefit provisions until a new MLA was signed. Plaintiff's Exhibit 19. Plaintiff refused to execute this agreement.

On July 21, 1980 a new 1980–83 MLA was negotiated, and the strike ended. Since that date the project has proceeded at a normal pace.

The contentions of the parties are not complicated. Plaintiff points to Article VII of the short form, which states that the agreement is to remain in effect for two years, and from year to year thereafter unless terminated by notice.[1] Plaintiff argues that this provision required defendant to provide workers without interruption for the full lifetime of the short form, that the expiration of the 1977–80 MLA did not terminate the short form, and that the June 30, 1980 strike was a breach of the short form contract.

Defendant relies upon Article II of the short form, which states in relevant part that the employer agrees to be bound by all terms of the from time to time current MLA, and that the parties recognize the defendant's policy of bargaining for uniform wages and working conditions from all employers in the trade.[2] Defendant argues that the expiration of the 1977–80 MLA ended its obligation to provide workers to plaintiff until a new MLA was signed.

The parties have not cited, and research has failed to disclose, a factually similar case dealing with the expiration of a MLA prior to the expiration date of a short form agreement. *Cf. Seymour,* 609 F.2d at 349–50 (short form contained provision that it would terminate when the MLA was modified). Considering all of the evidence, the court concludes that defendant had an obligation to provide carpenters on the jobsite under the short form agreement only while a current MLA was in effect.

Plaintiff asserts that when the parties discussed avoiding jurisdictional work disputes at the pre-job conference defendant was put on notice that plaintiff intended the short form to preclude any strike. This contention is unpersuasive for several reasons. First, discussions about which union will perform which tasks are completely different than discussions about the existence of a binding union contract. Second, plaintiff's representatives admit that there was absolutely no mention made at the pre-job conference about a potential strike. Finally, testimony disclosed that in 1974 principal officers of plaintiff experienced an almost identical situation of being struck by defendant when the 1971–74 MLA expired even though a short form was still in effect. The significance of this 1974 incident is that it put plaintiff's officers on

1. Article VII of the short form states in full:
   This Agreement shall become effective on the date hereof and remain in full force and effect for a period of two years, and from year to year thereafter, unless either party has given sixty (60) days written notice prior to the anniversary date to the other party of intention to terminate.
   Plaintiff's Exhibit 6.

2. Article II of the short form states in full:
   The parties recognize that a Master Labor Agreement covering carpenters work done at the jobsite is entered into from time to time between the COUNCIL and certain employers in the construction industry. The parties further recognize that these jobsite agreements determine the prevailing wages, fringe benefits, and working conditions for employees represented by the COUNCIL in this industry. The parties also recognize the COUNCIL's historical and traditional policy, unilaterally adopted, of bargaining for uniform wages and working conditions from all

employers in the same trade or craft to insure uniform benefits for all of the members and employees it represents. The EMPLOYER therefore approves of, consents to, ratifies and agrees to be bound by all clauses of the from time to time current Master Labor Agreement existing between the COUNCIL and the employers signatory thereto, and further including any amendments, modifications, extensions, changes, supplements, and renewals of said Agreement negotiated by the parties thereto. However, the EMPLOYER shall not be bound by clauses in any Master or other labor agreement which have peculiar applicability only to the signatories thereto, as determined by the COUNCIL. (Note: The Joint Conference Board provisions of Master Labor Agreements are an example of Provisions peculiarly applicable only to signatories to that Agreement.)
Plaintiff's Exhibit 6.

notice that defendant did not view short form agreements as bars to a strike if the underlying MLA expired. In this context, the pre-job conference discussion does not support plaintiff's position.

Plaintiff asks the court to examine and interpret the short form agreement almost as if the MLA does not exist. Considering the broad incorporation of all MLA terms by Article II of the short form, the documents must be read together. *See Rehart v. Clark*, 448 F.2d 170, 174 (9th Cir. 1971); *Colden v. Asmus*, 322 F.Supp. 1163, 1165 (S.D.Cal.1971); 4 S. Williston, Contracts § 628 (3d ed. 1961). It is clear to the court that the purpose of the short form is to bring employers who are not signators to the MLA into line with the uniform wages and working conditions union carpenters have throughout the county. This objective is explicitly stated in Article II, and is reflected in the nickname short forms have in the trade as "me too" agreements. *See Brogan v. Swanson Painting Co.*, 101 LRRM 2068 (W.D.Wash.1979). The employer is intended to be placed in an economic posture essentially no better nor worse than employers who are signators to the MLA. Obviously if plaintiff had been allowed to force union carpenters to continue working at the expired wage rate (or any other rate for that matter) when the MLA terminated, plaintiff would have enjoyed an advantage not held by employers who were signators to the MLA.

Article II of the short form specifically refers to the "from time to time current" MLA. On its face then, the short form contemplates that there will be a *current* MLA in effect. The short form does not say that the parties will be bound by the *most recent* MLA, it speaks only in terms of a current MLA.

Plaintiff argues that expiration of the 1977–80 MLA did not *terminate* the short form agreement, and therefore defendant was still obliged to provide workers pursuant to the short form agreement. *See Ted Hicks*, 572 F.2d at 1027 n.2. The court agrees that the short form was not terminated, it was a contract with a life of at least two years. It does not follow, however, that expiration of the MLA had no effect on the short form. As the court reads the short form, it is a contract which imposes obligations to perform and pay for work only during periods of time when a current MLA is in effect. During periods when no MLA is operative the parties simply have no immediate contractual obligations. When, as happened in the instant case, the new 1980–83 MLA was signed the obligations under the short form again became operative and carpenters returned to work.

Plaintiff also alleges that defendant engaged in secondary boycott picketing, and that defendant committed libel and slander by telling people that the carpenters did not have a contract with plaintiff during the strike. These issues were almost totally ignored during trial. Plaintiff has failed to meet its burden of proof regarding these claims.

In summary, defendant did not breach the short form agreement by striking when the 1977–80 MLA terminated. Nor did defendant mislead plaintiff into believing that no strike would occur during the life of the short form. Defendant had an obligation under the short form agreement to provide workers only while there was a current MLA in effect.