William C. WAGGONER, et al.,
etc., Plaintiffs,

v.

Robert Lee DALLAIRE, etc., Defendants.

No. CV 77–1654–AAH.

United States District Court,
C.D. California.

Aug. 26, 1983.

Jett, Clifford & Laquer by Christopher M. Laquer, Los Angeles, Cal., for plaintiffs.

Wright, Peterson & Sanders by Betty Ruth Sanders, Atascadero, Cal., for defendants.

## FORMAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, Senior District Judge.

### FINDINGS OF FACT

1. The plaintiffs are the trustees for Operating Engineers Trusts (viz: the Health and Welfare Fund, the Pension Trust, the Vacation-Holiday Savings Trust and the Journeymen and Apprenticeship Training Trust). These trusts are express trusts created under 29 U.S.C., Section 186, by virtue

of collective bargaining agreement and trust agreements between the International Union of Operating Engineers, Local No. 12 (Union), and the Southern California General Contractors' Association (Contractors).

2. Union is a labor organization within the meaning of the National Labor Relations Act, as amended, 29 U.S.C., Section 152(5).

3. The defendant is a licensed construction contractor and is an employer within the meaning of the National Labor Relations Act, as amended, 29 U.S.C., Section 152(2)(6)(7).

4. The defendant Robert Dallaire, who at all relevant times was a sole proprietor doing business under the name A-Jay Excavating (A-Jay), signed a short form collective bargaining agreement (Short Form) with Union on or about March 5, 1969.

5. The Short Form incorporated most of the terms, including those governing the pension fund contributions of the Master Labor Agreement (MLA), a multiple employer collective bargaining agreement negotiated between the Union and Contractors.

6. The MLA had a term of four (4) years and was to expire on July 1, 1969.

7. A-Jay was not a member of any of the several Southern California or Southern Nevada general contractors' associations constituting Contractors. A-Jay was not a party to the MLA at the time Contractors executed the MLA with the Union.

8. Neither the Union nor A-Jay gave notice (written or otherwise) to the other party of a desire to terminate or modify the Short Form between them before July 1, 1969.

9. Prior to July 1, 1969, A-Jay reported hours of employment to the Union and paid contributions to the trusts.

10. After July 1, 1969, and specifically in October 1969, A-Jay reported hours worked by Dale Taylor to the Union. Contributions were paid to the various trusts by A-Jay as a result of these hours worked.

11. No hours of employment were reported to the Union by A-Jay after October, 1969. No contributions were paid to the various trusts by A-Jay after October 1969.

12. The Short Form was effective by the provisions of its Article V for the term of the 1965–1969 MLA and any "renewals or extensions" thereof.

13. Article V of the Short Form is clear and unambiguous in intent and effect.

14. Article V of the Short Form is the termination clause and controlled the termination date of the Short Form.

15. Article II of the Short Form is jurisdictional in nature and has no effect as to termination of the Short Form.

16. The 1965–1969 MLA was not extended or renewed.

17. The 1969–1974 MLA was a new and different agreement and not a renewal or extension of the 1965–1969 MLA.

18. The 1965–1969 MLA terminated on July 1, 1969.

19. The Short Form signed by defendant Dallaire, on behalf of A-Jay, terminated simultaneously with the termination of the 1965–1969 MLA on July 1, 1969.

20. The Short Form and MLA here under consideration is the same as interpreted in *Seymour v. Coughlin Co.,* 609 F.2d 346 [9th Cir.1979].

21. Plaintiffs claim no recovery for contributions during the effective term of the Short Form or 1965–1969 MLA.

22. Defendant was not a party to the collective bargaining agreement negotiated between Union and Contractors.

23. The defendant, as prevailing party, is entitled to attorneys' fees pursuant to California Civil Code Section 1717.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this action under Section 301(a) of the Labor Management Relation Act [29 U.S.C. § 185(a)].

2. Defendant A-Jay was bound by its Short Form with Union for the period

March 5, 1969 to July 1, 1969. Said Short Form incorporated by reference some of the terms of the then existing MLA in effect between Union and Contractors. Said Short Form also incorporated by reference any renewals or extensions of the then existing MLA. The then existing MLA was neither renewed or extended. Rather, a new and different MLA was entered into between Union and Contractors, which went into effect on the day the prior MLA expired, namely July 1, 1969.

3. Defendant A-Jay was bound to the 1965–1969 MLA even if he misunderstood the terms of the agreement.

4. Defendant A-Jay's later conduct brought about by its misunderstanding of the terms of the Short Form did not vary the terms of the Short Form.

 5. Later conduct of one of the parties to a contract will not resurrect a contract which has expired by its clear and unambiguous terms.

6. Defendant A-Jay made all required payments of fringe benefit contributions to plaintiffs for each and every hour worked by or paid to employees performing any work covered by the MLA to which it was bound.

7. Defendant A-Jay is entitled to attorney's fees and costs of suit as may be shown.

8. Plaintiffs shall take nothing by their complaint against defendant A-Jay.

LET JUDGMENT BE ENTERED ACCORDINGLY.

SUPPLEMENTARY FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER FOR JUDGEMENT FOR DEFENDANT AND AGAINST PLAINTIFFS

LOS ANGELES, CALIFORNIA, TUESDAY, AUGUST 23, 1983

3:25 P.M.

In addition to the Formal Findings of Fact and Conclusions of Law signed and filed herein on August 26, 1983, the Court makes the following Supplementary Findings of Fact and Conclusions of Law, which were stated in open court on August 23, 1983:

THE COURT: Now, I don't think I need any further argument. We have been arguing the law off and on all along, but I think I would be remiss if I didn't do as I usually do and give a ruling from the bench and indicate that I may write an opinion. I don't know; I haven't decided on that as yet because I have problems the next couple of weeks, but it appears to me that, upon rereading the two reporter transcripts of the prior trial and the documents introduced in evidence at that trial and produced again here, and after considering the additional documents produced here and further testimony elicited here, including the testimony of Mr. Majich again here, there is no doubt in my mind nor, I think, any peradventure of a doubt, that I must decide on the evidence here adduced exactly as Judge Crary did in the case that went up on appeal and is reported from the Ninth Circuit, *Seymour v. Coughlin,* 609 F.2d 346 (9th Cir.1979). First of all, the Master Labor Agreement of July 1, 1969 is an absolutely new and different document and contract and agreement. That is, Exhibit 2 is completely different from the one that was signed or dated July 1, 1965 and was effective until July 1, 1969. They are two separate and distinct agreements; just no question about it. And so I would state it even more strongly than apparently Judge Crary stated it, as he seems to be paraphrased by the Ninth Circuit.

He held, of course, that the agreement of July 1, 1969 that covers '69 to '74, Exhibit 2, was *not*—I emphasize "*not,*"—any extension or renewal of Plaintiff's Exhibit 1–A which is the document dated July 1, 1965 covering '65 to '69. He said it was not an extension or renewal; that is, Exhibit 2 is not an extension or renewal of Exhibit 1–A.

I agree with that, but I think more than that, it is a completely distinct, separate and individual document for the following reasons:

It is an entirely different contract. All you have to do is compare the two, and you find there is some language the same, but there is nothing to indicate that it was a continuation of, or extension of, or renewal of Exhibit 1–A. Exhibit 2 is an entirely different document and runs to some—as I recall it—I have it here—119 pages. It has a very extensive index which Exhibit 1–A doesn't have. 1–A only runs 53 pages. Exhibit 2 runs 119 pages, twice as long, and it has a lot of things in it—that is, Exhibit 2 does—different from those things that are in Exhibit 1–A, and a lot of different language. Even the numbering system is different, completely different.

The numbering system I just notice now on Exhibit 2 runs by Article and then by paragraphs, runs through paragraphs of Arabic numbers under each Article, that is by capital letters, and then Arabic numbers. Whereas Exhibit 1 starts with a 100 and then 100.1, and then it goes through that kind of a decimal numbering system all the way through, and it goes to No. 1701. Each Article starts a new hundred series.

The whole thing is changed. I think I am reading it correctly. Of course, Exhibit 1–A does not have a table of contents or an index, and Exhibit 2 does have a table of contents as well as an index. Well, I am not going to go through it word by word or page by page, but I think it can be readily seen by comparing the two, that they are two different agreements, two entirely separate and different agreements. Neither one refers to the other.

They cover different time periods. Exhibit 2 covers the period 1969 to 1974. Exhibit 1–A covers 1965 to 1969.

The typographical setup is entirely different for headings, subheadings and the language is different. You get into—well, I look at, for instance, Exhibit 1–A, it is of course hard to find anything to compare with what is in Exhibit 2. But while there is some language—no doubt about it—that is identical, there is a lot of language that is not identical, and of course, even Mr. Majich admits that each agreement may have a number of changes in it depending on

court decisions—that is, each new Master Labor Agreement might have changes from the previous one due to court decisions, changes in the laws, and changes in the industry. So, as I say, the two are two distinct instruments, I think, not only by looking at them and looking at the language, but also, and I think very importantly, something that is not mentioned in the *Coughlin* case, underline "*Coughlin* case," and that is that Exhibit 2, which we will call the '69 to '74 agreement, July 1, 1969 to July 1, 1974 agreement, Exhibit 2, is between the *Associated General Contractors of California, Inc.,* which surely must mean "incorporated" and a number of other employer associations, on the one hand, and the Operating Engineers Local Union 12 on the other hand. Whereas Exhibit 1–A which is the July 1, 1965 agreement covering the period July 1, 1965 to July 1, 1969, the previous agreement, was between the *Southern California Chapter of the Associated General Contractors of America;* two entirely different parties.

They each claimed jurisdiction, maybe rightly so, over contractors, general contractors in the Southern California area, but they are two different entities, and Mr. Majich, he couldn't explain why they were, but he knew they were two different entities and finally admitted it. He had to.

The Associated General Contractors of America is certainly a different entity than the Associated General Contractors of California, Inc.; just no question about that.

Comparing the two contracts, Exhibit 2 and Exhibit 1–A, you have different language, twice as many pages in 2 as in 1–A, and a table of contents and an index in 2 which you do not have in 1–A, and a different party signatory, a pertinent party to our case signatory in 2 than 1–A. So they are two completely different contracts.

Now, we turn to the question of looking at Exhibit 1, which is the so-called Short Form Agreement Mr. Dallaire admittedly signed on behalf of his company, which has the fictitious name of A-Jay Excavation. He signed that as I recall it, on March 5, 1969. We turn to that and look at Article

II and Article V. They are the two Articles which Judge Crary looked at and which the Ninth Circuit looked at in the *Coughlin* case, and which Judge Crary held, as did the Ninth Circuit, affirming, with certiorari denied in the Supreme Court of the United States, held were the two Articles in Exhibit 1 ("Short Form Agreement") that have anything to do with the ending date or termination date or expiration date, if you will, of Exhibit 3 and therefore of any obligations that Dallaire or his company had under Exhibit 1.

Judge Crary and the Ninth Circuit held that because the termination date of Exhibit 1–A would necessarily be the termination or expiration date of Exhibit 1, the Short Form Agreement. In other words, the Short Form Agreement was to be in existence as long as—according to Judge Crary and the Ninth Circuit—as long as Exhibit 1–A was in existence, and no longer, because Article 5 says: "This agreement shall become effective as of the date shown above ..." which is of course March 5, 1969, "... and shall continue in effect for the same term as the applicable multiple employer labor agreements..."

It does not say "Master Labor Agreement." It does not say "Master Construction Agreement." It is unbelievable. I don't understand it. And then it goes: "... and for any renewals or extensions thereof, unless either party shall give written notice to the other party, at least 60 days prior to the termination date of the appropriate Multiple Employer Agreement, of its desire to terminate."

Well, as I have said before, if you look at this Short Form Agreement it has got a lot of conflicting language which really doesn't make much sense. It talks about applicable Multi-Employer Agreements and then at the end of Article VI it talks about a Master Construction Agreement—unless it means all of these agreements. But the only one marked at the end of Exhibit 1 is Master Construction Agreement, so that must mean the applicable Multiple Employer Labor Agreement, even though the language used is "Master Construction Agree-

ment." But there is no such thing as Master Construction Agreement. Exhibit 1–A is called Master Labor Agreement between, of course, as I said before, the Southern California Chapter of the Associated General Contractors of America, whereas the one that was entered into in 1969 was between Associated General Contractors of California, Inc. and not even a Southern California Association of any kind and certainly not the Southern California Chapter of the Associated General Contractors of America, and those are referred to as Master Labor Agreements, not Master Construction Agreements. Yet that is apparently what the parties had in mind, at least in the first trial of this case. I didn't notice that difference, but I sure notice it now, and it keeps striking me in the eye.

At any rate, the Ninth Circuit and Judge Crary in the *Coughlin* case agree that the duration of Exhibit 1 is limited to the duration of Exhibit 1–A, and Exhibit 1 would be terminated automatically and was terminated automatically because, as Judge Crary was quoted, since the contractors and the Union—assuming they are the same, which I don't think they are—they are two different entities—"entered into a new and different [MLA] [Master Labor Agreement] for the period 1969–1974 which substantially changed, modified and amended the prior [MLA]."

Well, I would add to that: "Different parties entered into a new and different MLA on July 1, 1969." The different parties, of course, are the different contractors' associations between Exhibits 1–A and 2. Once again, in 1–A it is the Southern California Chapter of the Associated General Contractors of America which enters into the contract, and in 2 it is Associated General Contractors of California, Inc. So I would say Exhibit 2 is not only a new and different contract which substantially changed and modified and amended Exhibit 1–A, but it has different parties, even. And so it is a completely different contract with different parties and which substantially (I agree with that) changed, modified and amended the prior one. That is to say,

Exhibit 2 did that to Exhibit 1–A, so that 2 could not possibly be called an extension or renewal of 1–A. It is simply an entirely new and different contract.

Therefore, Exhibit 1–A necessarily by operation of law terminated and expired as of its termination and expiration date, and this termination and expiration date had to be, since it was for one year—either June 30 or July 1, 1969. I don't care whether you call it midnight of June 30 or daylight of July the 1st, but when a contract runs from July 1st, 1965 to July 1st, 1969, you either exclude the first day and include the last, or you include the last day and exclude the first. That is a fundamental rule for determining length of time both in State Court and Federal Court. And Exhibit 1–A either ran from July 1, 1965 to June 30th, 1969, or it ran from July 2 of 1965 through July 1, 1969, but in any event it certainly terminated and expired at the end of June 30th, 1969 or July 1st at the latest.

Now, because Exhibit 1–A is the Master Labor Agreement which was in effect at the time the agreement was signed by the defendant Mr. Dallaire, it certainly is the applicable one. There is just no other one that could be applicable because it was the only MLA in effect when he signed Exhibit 1. That being the case, whether you look at Article II or Article V, or look at both of them and try to make sense of them together, the only sense they make is that Mr. Dallaire agreed to be bound by all the terms and conditions of Exhibit 1–A which was the one, Multiple Employer Agreement applicable to Dallaire's operations and in effect in the area at the time he signed the Short Form, Exhibit 1.

Now, if 1–A was the one that was in effect and applicable to him, which is referred to in Article II of Exhibit 1, and I think it is the only one that could be applicable, it is the only one that was in effect, then when Exhibit 1–A terminated and expired, then according to Article V of the Short Form Agreement, Exhibit 1 likewise terminated and expired because it was to continue in effect for exactly the same term

as the Master Labor Agreement in effect and applicable, which is Exhibit 1–A.

Well, that being the case, I find that Section 8(d) of the National Labor Relations Act [actually it is now the Labor Management Relations Act] does not govern this matter here, even though it has been raised here as being a part of the plaintiff's case. I don't see how 8(d) in any way, shape or form would make a collective bargaining agreement run beyond its term.

Now, that does not mean that I am saying, and I do not say, that an employer could violate Section 8(d) by giving a notice of termination other than in writing, because 8(d), which is 29 U.S.Code § 158(d), does provide that no party to a collective bargaining contract, which obviously these Exhibits 1 and 1–A are, shall terminate or modify it unless the party serves a written notice on the other party 60 days prior to expiration, offers to meet and confer, notifies the Federal Mediation and Conciliation Service, etc. Section 8(d) LMRA, 29 U.S. Code § 158(d), does continue full force and effect all of the terms and conditions of the existing contract without resorting to strike or lockout.

■ Well, sure, that covers both parties to a collective bargaining agreement, and properly so. Neither side can terminate a collective bargaining agreement without written notice at least 60 days ahead of time, and certain things have to be complied with. But here we do not have a termination by one party or the other. Here we have an expiration—expiration of the contract. I don't see how Section 8(d) could ever have anything to do with expiration. It only has to do with termination by one of the parties, not with the date of the expiration under the very terms of the contract itself. ... . . .....

■ Now, the expiration date of this Master Labor Agreement, Exhibit 1–A, which was the applicable one covering the area and the type of work that the defendant was doing by its own terms had to expire, as I said, either midnight June 30 or by midnight July 1, 1969, depending on

which rule of law you take for the computation of time.

I prefer to include the first and exclude the last, so that would mean it ran from July 1, 1965 to midnight June 30, 1969. Since the defendant had signed this Short Form Agreement in March of 1969, it is this agreement 1–A, the Master Labor Agreement, which is the one referred to in the Short Form Agreement, and it is the one whose expiration date is and must constitute the expiration date of Exhibit 1, the Short Form Agreement. By the very terms of the Short Form Agreement it is to last exactly as long as the Master Labor Agreement "applicable and in effect." particularly since the succeeding contract which is Exhibit 2 is a new and completely different contract with different parties as I said, and can no way be interpreted as an extension or renewal. Whether you draw that language from Article II or just draw it from the air somewhere, Exhibit 2 is clearly not an extension or renewal of Exhibit 1–A, and therefore the defendant is not bound by any contract in litigation here other than Exhibit 1 and Exhibit 1–A. He is not bound by Exhibit 2. He is not bound by Exhibit 3 or any other Master Labor Agreements other than Exhibit 1–A which was the one in effect when he signed the Short Form Agreement, Exhibit 1.

Now, that being true, what can the Court do here? If the Court believes this to be true, and I do, and I so find, and I so conclude under the law that it is true, what possible relief could be granted to plaintiffs for any violation by defendant of either Exhibit 1 or Exhibit 1–A? They both expired as of June 30, midnight; June 30, 1969.

Having so expired, they are *functus officio.* They are nothings with regard to any point in litigation here because there is no charge that defendant violated either one of these contracts, and there could not be.

As far as I can tell plaintiffs have not gone back with their audit that far. Moreover, the statute of limitations would bar it because this action wasn't filed until May 6, 1977, and the parties agree in the pretrial order that the statute of limitations applicable is a four-year statute drawn from the state law. So, any liability defendant might have under either of these contracts, Exhibit 1 or 1–A, had to be—it seems to me, had to be derivative from some activity of his under one of those contracts or both, and they both expired midnight June 30, 1969. This is in itself almost four years before the beginning of the tolling period, May 6, 1973 under the four-year statute of limitations, and there is no claim anywhere made for that kind of a liability back in 1969 or under the 1969 agreements, no claim at all. And so, if we be right in our interpretation, our examination of the two contracts—that is, the Short Form Agreement, Exhibit 1, and the Master Labor Agreement in effect when the Short Form Agreement was signed, which is Exhibit 1–A, there cannot be any judgment awarded for plaintiff.

I might add, not only does the *Coughlin* case command this. Well, not perhaps by *res judicata,* although certainly the plaintiffs had their opportunity to argue the matter in the *Coughlin* case. The only thing which they didn't have an opportunity to argue up in the Ninth Circuit was the effect of Section 8(d) of the Labor Management Relations Act, 29 U.S.Code, § 158(d), and I have disposed of that as I have indicated, because this case does not involve a termination by either party, but rather expiration of the contract by its own terms, and there is no case in the books that interprets Section 8(d) of the LMRA, 29 U.S. Code § 158(d) to prevent a contract from expiring on the date it is supposed to expire according to the very terms of the contract, even though it be a collective bargaining agreement. The termination spoken about there is termination by either party, not legal expiration under the very terms of the agreement.

Otherwise you could have collective bargaining agreements lasting forever, and they don't. You always have a set term, with a beginning date and an ending date. And the ending date by operation of law alone would be the date the contract says it

is to end. It does not require any termination by either party, so § 8(d) just has no relevance here and has no application here.

Now, I adopt the language and the reasoning of the *Coughlin* case in toto. Whether you use the language from Article II which refers to the Multiple Employer Agreement applicable and in effect as, quotes, "... a recognized, modified and renewed from time to time through collective bargaining between the union and the applicable Multiple Employer Group...," whether you use that language or you use the language from Article V that defendant is bound by any Multiple Employer Agreement in effect at the time of the signature "... and for any renewals or extensions thereof...," that is, the phrase from Article II or the phrase from Article V, the Short Form Agreement is clear. The Multiple Employer Agreement has to be Exhibit 1–A and not Exhibit 2 or any other subsequent agreement, because Exhibit 2 is clearly *not* "a renewal or extension," and in my view it is clearly *not* "recognized, modified or renewed."

Exhibit 2, as I say, is an entirely new, different—completely different in my view—contract or agreement with even a different pertinent party, as I have said three or four times. I don't want to bore anybody with it, but the rest of the language in the *Coughlin* case it seems to me, sets forth the true construction of the language of Exhibit 1, the Short Form Agreement. And so I agree with both Judge Crary and the Ninth Circuit in their holding that Exhibit 1 necessarily had to expire on the expiration date of Exhibit 2. There is just no question about it, whether you look at Article V or Article II, or both of them at the same time, in Exhibit 1.

The only other thing I wanted to discuss for a moment is this question of admission of oral testimony of oral modifications, or oral testimony with respect to interpretation or with respect to language used, what the language means, construed on the basis of practice and custom by the trustees, and by Mr. Majich, at the time he was a negotiator for the employers. Since then, of course, he has become a trustee and now a manager of the various fringe benefit trusts which are plaintiffs here.

Such oral testimony is precluded by the language in *Waggoner v. Dallaire* which is this case on appeal when it was sent back for this retrial in which we are now engaged. It precludes oral testimony about any alleged practice or custom by one party to an agreement, saying such oral testimony cannot control the Court in determining what ruling the Court should make with respect to the meaning or interpretation of contracts that are collective bargaining agreements. As the Court points out in *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981), at 1366, Section 302(c)(5) of LMRA, which is 29 U.S.Code § 186(c)(5), precludes any oral, non-written custom or practice, or anything not in writing, from modifying or in any way changing or influencing the Court's interpretation of a written collective bargaining agreement.

As the Ninth Circuit states in our case up there, *Waggoner v. Dallaire,* at page 1366, it was to eradicate the problems—the shake-down problem, the kickback problem—arising out of collective bargaining agreements, that Congress made it a criminal offense for any employer to pay anybody anything of value. And if we should not follow the rule against modification by oral arrangements of any kind or anything other than in writing, then the elaborate protection provided by 29 U.S.Code § 186, Section 302 of LMRA, would be nullified. The positive effect of that section to protect trust beneficiaries would also be nullified, and I think it is obvious why it would be.

Suppose the custom and practice would be to deny benefits to certain people that had gray hair or wore blue ties or any other obvious boondoggle sort of thing, in an attempt to effect some kind of a kickback. If that custom or practice were permitted to govern the language or interpretation of a written collective bargaining agreement, or if any other kind of non-writing were permitted to vary the terms and conditions or the interpretation of such a collective bargaining agreement, all sorts of problems

could arise for not only the trustees but for beneficiaries of the trustees; that is, for the working men who are entitled to fringe benefits. They would be knocked out of fringe benefits by a custom or practice, even if in the language of the Agreement they couldn't be kicked out of the written plan awarding them fringe benefits.

Now, the case cited by plaintiffs to the Court, *Kemmis v. McGoldrick,* 706 F.2d 993 (9th Cir.1983), written by Judge Skopil does not cover the situation we have here. It says "A Short Form Agreement" but I have no indication it is the same one we have here. While I agree with what Judge Skopil says there, that the standard of review, the interpretation of the contractual provision, is always a question of law that can be reviewed de novo, I assume that this is exactly what the Ninth Circuit did in the *Coughlin* case. It reviewed the identical Exhibits 1–A and 2 we have here, and held they were entirely different contracts.

This case of *Kemmis v. McGoldrick* at page 996 points out that oral labor contracts would be very bad:

"Oral agreements between union representatives and employers regarding the meaning of a written trust fund agreement are difficult to prove. Judicial recognition of such oral statements invite collusion and controversy to the detriment of the employee beneficiaries. *Id.* These principles have been applied to both prior oral understandings..." [citing our *Dallaire* case, 649 F.2d at 136] "... and subsequent modifications." [citations omitted.]

And so the Ninth Circuit says that the lower court was in error in applying oral understandings to interpret disputed language. So it reversed the District Court, and I don't see how in any way, shape or form, we can ignore this case which makes it clear that oral interpretations, oral understandings to interpret disputed language are bad. In my view "oral" includes custom and practice, because how else would the custom and practice be shown except by non-written activities? How is it shown here? No other way than just by the oral

testimony of Mr. Majich. And to do that in order to interpret any one of these agreements here would be completely bad, invalid, void and violative not only of the *Dallaire* case but also of the *McGoldrick* case which relies on the *Dallaire* case. Their Ninth Circuit cases were in no way challenged by *Construction Teamsters Health and Welfare Trust v. Con Form Construction Corporation,* 657 F.2d 1101 (9th Cir. 1981).

I know it is cited by plaintiff, but I don't see anything in it contrary to what I have ruled here, contrary to the *Dallaire* case or the *Coughlin* case or the *McGoldrick* case.

Similarly, I don't disagree with *Zinser-Furby, Inc. v. San Diego County District Council, etc.,* 681 F.2d 1171 (9th Cir.1982), which is just a couple lines affirming Judge Turentine of the Southern District of California, 516 F.Supp. 952 (S.D.Cal.1981). These require a case-by-case adjudication and add that there is no *per se* rule laid down by *Coughlin.* But when you have exactly the same documents, the same agreements, Exhibits 1 and 1–A and 2, here now, as Judge Crary had before him in the *Coughlin* case, it seems to me the decision and opinion of the Ninth Circuit, Judge Crary being affirmed, is controlling if not *res judicata,* and if not collateral estoppel.

It could be argued, it seems to me, that there is a collateral estoppel, because plaintiffs were fully informed and briefed, and argued and had every opportunity to present anything they wanted to in the *Coughlin* case. But its interpretation of Exhibits 1, 1–A and 2 is the same as mine, only I think mine is perhaps stronger than the Ninth Circuit's because as I view the Agreements they are not only separate and distinct, but the pertinent employer parties are separate and distinct. In any event, if you were to give any other interpretation or construction, then as the Ninth Circuit says, defendant would be purchasing "a pig in a poke." *Coughlin,* 609 F.2d 346 at 350.

If defendant here were to be bound by the new MLA, Exhibit 2, he would be bound by something that would come into effect, that would be born and come into existence

after the Short Form Agreement, Exhibit 1, had terminated and expired on the expiration date of Exhibit 1–A. I feel it would be unjust, unfair and inequitable to put that burden on the defendant by allowing any kind of recovery for the plaintiffs here in this case. It is just too obvious, it seems to me, so very obvious, after a comparison of the two agreements, that Exhibit 2 is completely different, different parties, different pertinent parties, than Exhibit 1–A. Therefore Exhibit 1 necessarily by its own terms expired on the expiration date of Exhibit 1–A and not on the expiration date of some other Master Labor Agreement, whether Exhibit 2 or Exhibit 3 or any other one, because it was 1–A that determined the expiration date for Exhibit 1, which was midnight, June 30, 1969, and therefore defendant has no liability to plaintiffs.

■ Now, I think that defendant, as the prevailing party, is entitled to reasonable attorney's fees and costs. Whenever one side is entitled to attorney's fees and costs in an action, the law is pretty clear that the other side is entitled to the same things if the other side is the prevailing party.

With respect to the award of attorney's fees allowable to defendant, the Court after hearing evidence and upon oral stipulations of the parties, finds and concludes the sum of $14,499.83 should be awarded to defendant as and for reasonable attorney's fees under 29 U.S.Code § 1132 *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069 (1983), as well as costs of action incurred by defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

### JUDGMENT

Pursuant to the Mandate and Opinion of the Court of Appeals for the Ninth Circuit, entitled "*Waggoner, et al., v. Dallaire,* 649 F.2d 1362 (9th Cir. July 10, 1981), No. C.A. 79–3543, the above entitled matter came on regularly for retrial by the Court, sitting without a jury, on August 22, 1983, and continued from day to day thereafter until August 24, 1983, whereupon, after due consideration and submission the Court made, signed, filed and entered its findings of fact, conclusions of law and order for judgment. Based upon said findings of fact, conclusions of law, and order for judgment, and good cause appearing, the Court now renders its Judgment in favor of defendant and against plaintiffs, as follows:

IT IS ORDERED, ADJUDGED AND DECREED:

(1) Plaintiffs shall take nothing against defendant by reason of their Complaint herein or by reason of any cause of action alleged or attempted to be alleged in said Complaint.

(2) Defendant shall have and recover against and from plaintiffs his reasonable attorneys fees in this matter in the total sum of $14,499.83.

(3) Defendant shall have and recover from plaintiffs his costs of suit incurred herein which are hereby taxed in the amount of $_____.

(4) The Clerk of Court shall forthwith file and enter the findings of fact, conclusions of law and order for judgment aforesaid, and this Judgment, and serve copies thereof upon all counsel of record for all parties herein.